Barbara A. HERZOG, Appellant,

v.

Gary HERZOG, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 6, 2005.
Filed Nov. 21, 2005.

Gregory A. Henry, Bradford, for appellant.

Daniel P. Lynch, Cranberry, for appellee.

Before: HUDOCK, PANELLA and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Wife Barbara Herzog appeals the Order entered June 11, 2004 requiring appellee husband to comply with the terms of the parties' September 2000 marriage settlement agreement and build wife a modular house consistent with her desire as expressed in that agreement, rather than in the more extravagant style she more recently has demanded. The Order also denied husband's request that wife vacate the "marital residence."

¶ 2 The parties were divorced by an October 4, 2000 Decree which incorporated by reference the parties' September 7, 2000 marriage settlement agreement. Paragraph 5(j) of that agreement requires that husband provide wife a modular home of wife's choice, as well as various amenities, such as, *inter alia*, fencing and landscaping, the specifics of which were to be determined by wife. The agreement also provided that wife would remain in the marital home until the new home was constructed in accordance with the agreement.

¶ 3 Thereafter, wife selected a modular home with a purchase price of approximately $75,000. Husband duly purchased the home. After the home was purchased and set on the foundation, wife met at the house with Gary Stiable, a contractor and acquaintance of both parties, and indicated improvements she desired, which amounted to approximately an additional $35,000.

¶ 4 At some point, wife became unhappy with the pace and/or quality of the work on the modular home. She considered two other properties as alternatives to the modular home. Stiable looked at both with wife. The first, the "Simms residence," with improvements desired by wife, would have been worth approximately $135,000. The other, the "Fultz residence," would have been worth approximately $140,000. Wife proposed an amendment to the marriage settlement agreement, pursuant to which husband would receive the modular home and the property on which it sat, and he would purchase for her the Fultz residence, and on it make the improvements she desired. The amendment was never executed because husband was unhappy with the asking price of the Fultz residence.

¶ 5 Wife eventually engaged a contractor, Bob Cummins. After meeting with

wife and discussing her desires for the modular home, Cummins produced new specifications for the improvements totaling approximately $2.3 million, including $893,000 worth of fencing and $950,000 worth of landscaping.

¶ 6 Ultimately, husband filed the underlying petition for special relief, in which he requested that the court interpret the marriage settlement agreement to allow him to construct and provide a home for wife which was consistent with the parties' agreement, that it order her estopped from specifying amenities and improvements that in husband's estimation varied materially from the terms of the parties' agreement, and finally, that she be ordered to vacate the residence known as the marital home.[1]

¶ 7 In addition, wife filed a petition for contempt in which she alleged that husband had failed to comply with various terms of the marriage settlement agreement. Those terms included, *inter alia*, a requirement that husband pay wife a total of $225,000 in $15,000 installments over a period a 15 years, husband's payment of wife's health insurance premiums, and wife remaining at the marital residence without incurring any financial obligations, until construction of the modular home was completed.

¶ 8 After a hearing on both wife's petition for contempt and husband's petition for special relief, the court entered the June 11, 2004 Order which wife appeals. The court concluded that wife's position that she is entitled to make selections based upon the "Cummins specifications" is unreasonable as a matter of law, and in making this assertion, violated her duty to deal in good faith. It further found Cummins' testimony to be credible that the modular home is not in livable condition

and is not safe. Finally, the court found husband had not proven that wife was no longer living at the marital home. Thus, it entered the Order underlying this appeal, granting husband's petition for special relief, permitting him to construct a house consistent with wife's desires as expressed in the fall of 2000, and not consistent with the Cummins specifications. Second, it denied husband's request that wife be required to vacate the marital home. The court heard testimony as to wife's contempt petition but scheduled another hearing on that matter at a later date.

¶ 9 Appellant's initial appeal from the June 11, 2004 Order (1024 WDA 2004) was quashed by this Court on July 20, 2004, as interlocutory since further proceedings were anticipated. A subsequent hearing on the contempt petition was held on September 23, 2004, and the parties ultimately entered into a new settlement agreement dealing with the issues of contempt and special relief. The trial court approved the settlement agreement Order of October 1, 2004. This timely appeal followed in which wife raises the following issue as to the June 11, 2004 Order interpreting the marriage settlement agreement:

> After holding that the parties' marriage settlement agreement was unambiguous, integrated and modifiable only in writing, did the lower court wrongly apply the Reinstatement [sic] (Second) of Contracts § 205 and wrongly consider the parties' post-contractual conduct in its interpretation of the agreement?

Appellant's brief at 5.

■ ¶ 10 Effectively, wife contends the court used the parties' post-contract conduct to interpret the contract, concluding that wife's interpretation of the parties'

---

1. Husband alleged that wife purchased another home in June 2001 which she occupied as her residence and that she no longer maintains the marital home.

agreement was unreasonable based upon her post-contract meetings with Stiable, and the proportionality of the Cummins' specifications. Wife asserts the court was not permitted to interpret the agreement based upon the parties' post-contract conduct where it found that the agreement was unambiguous, integrated, and modifiable only in writing. She argues, "the lower court was *not* at liberty to disregard, indeed, in essence, to modify the plain terms of the parties' contract...." Appellant's brief at 14.

¶ 11 Responding to this argument in its Opinion filed pursuant to Pa.R.A.P.1925, the court clarified its holding and stated that wife had misperceived the underpinning of its analysis. The court maintains that its analysis was not an interpretation of the contract's language, but rather "an application of the principle fundamental to contract law—the implied term of fair dealing." Trial Court Opinion, Cleland, J., 1/12/05, at 2.

¶ 12 The issue before us is a question of law, thus our scope of review is plenary and the standard of review is *de novo. Buffalo Twp. v. Jones,* 571 Pa. 637, 645, 813 A.2d 659, 664 (2002).

¶ 13 First, we find there is quite apparently some ambiguity as to whether the language of paragraph 5(j) of the separation agreement provided appellant with completely unfettered discretion as to her selection of the specified improvements, as appellant would have this Court believe. A guide of interpretation provides that the expressions of the parties depend upon, and must be considered in, the context in which they were manifested. *See* Murray on Contacts, 3rd Ed., § 88A, at 421.

If a court seeks to determine the meaning attributed by the parties to their expressions of agreement, it is important for the court to place itself in the position of the parties at the time of contract formation. It must take into account all of the surrounding circumstances prior to and contemporaneous with the making of the contract so as to more precisely identify the sense of the expressions in question as apparently understood by the parties.

*Id.,* § 88A (footnotes omitted). In addition, subsequent conduct of the parties, course of performance, is an aid to interpretation.

If the parties to a contract have started to perform the contract and their performance manifests a common manifestation of their understanding of the prior expression of agreement, this evidence will be given great weight in determining the meaning attributed to their expressions.

*Id.,* § 88F, at 424. Also, and perhaps most importantly, "a reasonable interpretation of an expression is preferred to one that is literal, unusual, absurd, or of no effect." *Id.,* § 88D, at 423.

¶ 14 Applying these principles, we note the following. The record reveals wife had considered the Simms home even before the parties executed the marriage settlement agreement. The value of that home along with the improvements appellant desired, was approximately $135,000. As part of the marriage settlement agreement, pursuant to paragraph 5(j), husband agreed to purchase for wife a "modular home" of wife's choice. Accordingly, appellant selected a modular home with a purchase price of approximately $75,000, which, as noted above, husband duly purchased for her. Wife then met with a contractor to discuss the improvements as set forth in paragraph 5(j) of the parties' agreement. The cost of those improvements, including but not limited to a fence, a back deck, and landscaping, was approximately $35,000. Husband's testimony

makes clear that he was expecting the modular home along with the improvements to cost approximately $150,000 in total. The conduct of the parties both prior and subsequent to the execution of the marriage settlement agreement is consistent with that expectation. For wife to suggest that the language of the marriage settlement agreement provides her with absolutely unfettered discretion as to the improvements to the $75,000 modular home, such that she can spend approximately $2.3 million on improvements, including $893,000 worth of fencing and $950,000 worth of landscaping, is nothing short of unreasonable, and frankly, is absurd. This Court will not accept such an interpretation.

¶ 15 In addition, we agree with the court that Restatement (Second) of Contracts, § 205, is applicable here. Section 205 provides that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *See also Conomos, Inc., v. Sun Co., Inc.,* 831 A.2d 696 (Pa.Super.2003), *appeal denied,* 577 Pa. 697, 845 A.2d 818 (2004) (Stating that the Commonwealth has accepted the principle set forth in Section 205). Further,

> [g]ood faith performance or enforcement of a contract emphasizes faithfulness to an agreed upon common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving "bad faith" because they violate community standards of decency, fairness or reasonableness.

Section 205, Comment a.

¶ 16 This duty, imposed on every contract, including the marriage settlement agreement at issue here, certainly requires both parties to act consistent with the justified expectations of the other party. Wife's insistence that she has unfettered discretion such that she can force husband to pay for $2.3 million dollars in improvements to a $75,000 modular home certainly runs contrary to husband's justified expectations. In so insisting, wife's conduct is unfair and unreasonable. Husband had every right to enforce the contract according to his reasonable expectations, and the court committed no error in doing so.

¶ 17 Order affirmed.