**Weinkopff v. Mericle 100 Baltimore, LLC**

*Debra A. Jensen,* for plaintiff.

*Thomas J. Kelley,* for defendant Mericle 100 Baltimore LLC.

*Eugene P. Feeney,* for defendant Petras.

*John B. Day,* for additional defendant RCN Telecom Services Inc.

NEALON, *J.*, January 11, 2011—Defendant Mericle 100 Baltimore, LLC ("Mericle") has filed a motion for summary judgment in this personal injury action arising out of a fall that occurred on water in the lobby of a commercial building owned and occupied by Mericle. Mericle seeks summary judgment based upon the language of a lease agreement between Mericle and its tenant, additional defendant RCN Telecom Services, Inc. ("RCN"), which was the employer of plaintiff Irene Weinkopff ("Weinkopff") at the time of her fall. Mericle submits that the plain language of the lease agreement placed sole responsibility upon RCN for the maintenance of the lobby floor.

Summary judgment is appropriate only where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Barnish v. KWI Bldg., Co.,* 602 Pa. 402, 420, 980 A.2d 535, 546 (2009). The moving party bears the burden of proving the absence of a genuine issue of fact and its entitlement to judgment as a matter of

law. *Stimmler v. Chestnut Hill Hospital*, 602 Pa. 539, 554, 981 A.2d 145, 154 (2009). When considering a motion for summary judgment, the record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Chepkevich v. Hidden Valley Resort, L.P.*, 2 A.3d 1179, 1175 n. 1 (Pa. 2010); *Abrams v. Pneumo Abex Corp.*, 602 Pa. 627, 634-635, 981 A.2d 198, 203 (2009). "If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied." *Mull v. Ickes*, 994 A.2d 1137, 1139-40 (Pa. Super. 2010); *Kurowski v. Burroughs*, 994 A.2d 611,616 (Pa. Super. 2010).

On December 23, 1999, Mericle and RCN entered into a ten (10) year lease agreement with respect to the subject property. Paragraph 9(a) of the lease addresses RCN's proportionate share of utility expenses, insurance costs and maintenance fees and states that "[a]nything contained in this lease to the contrary notwithstanding, [RCN] shall be responsible, at its sole cost and expense, for the cleaning of the leased premises" (Mericle-RCN lease agreement dated 12/23/99, p.9). The agreement defines the "leased premises" as "constituting the entire first (1st), second (2nd) and third (3rd) floors of the building (excluding the common areas hereinafter defined)..." (*Id.*, p. 1). Although RCN did not lease the "common areas," the agreement entitled them to the non-exclusive use of such common areas which "include any and all public access corridors... foyers and lobbies..." (*Id.*, p. 2). Paragraph 9(a) further

provides that "[a]nything contained in this Lease to the contrary notwithstanding, [RCN's] Proportionate Share of the costs and expenses attributable to snow removal only shall be grossed up to be that percentage derived by dividing the number of square feet of space contained in the leased premises by the total number of square feet of space in the building which is then being occupied by all tenants" (*Id.*).

Paragraph 10 of the Mericle-RCN lease agreement is entitled "maintenance of leased premises; parking area, access area and common areas" and sets forth the responsibilities of Mericle and RCN with regard to those areas (*Id.*, p.13). Paragraph 10(a) indicates that RCN is responsible for repairs to the leased premises (excluding structural repairs to the roof, foundation and outside walls and the base electrical, plumbing, HVAC and mechanical systems) and all removal of refuse from the leased premises (*Id.*, pp. 13-14). Paragraph 10(b) addresses the maintenance obligations of Mericle, and in its original form read:

> [Mericle] shall be responsible for the exterior landscape maintenance of the real property, the parking area and the access area... and snow and ice removal from the access area and the parking area; provided, however, [RCN] shall reimburse to [Mericle], its Proportionate share of all grounds maintenance costs... incurred by [Mericle] with respect to the grounds maintenance and upkeep of the real property including, without limitation... snow and ice removal from all exterior portions of the building, including all sidewalks,

stairways, entrances and exits with respect to all areas of the building and the real property including, without limitation, the parking area, the access area and the common areas. (*Id.*, p. 14).

On September 9, 2002, Mericle and RCN executed a "second amendment to agreement of lease" which amended certain provisions of the original lease. Paragraph 6 of the second amendment modifies paragraph 9(a) of the original lease and provides, inter alia, that "[RCN] shall be responsible at its sole cost and expense, for the cleaning of the leased premises and for the cleaning of the entire first three (3) floors of the building (including ALL lobbies and common areas thereto)" (Mericle-RCN second amendment, p.6) (emphasis in original). Thus, unlike the original lease which excluded the "common areas" from RCN's "cleaning" responsibilities, the second amendment expanded RCN's cleaning duties to expressly include the lobbies and common areas of the first three floors. Furthermore, paragraph 9 of the seond amendment amends paragraph 10(b) of the original lease to state that although Mericle remained responsible for "snow and ice removal from the access area and the parking area," the "common areas" were no longer included among Mericle's snow and ice removal duties and RCN became obligated to reimburse Mericle for "all grounds maintenance cost" rather than RCN's proportionate share of those costs (*Id.*, p. 11) (emphasis in original).

Examining the summary judgment materials in the light most favorable to Weinkopff the record reflects that on March 7, 2007, Weinkopff was employed by RCN

which leased office space in Mericle's building. Due to active and ongoing inclement weather, the floor mats located at the entrance to the Mericle building had snow and ice present on them. As Weinkopff walked across the first floor lobby area of the building en route to work at approximately 9:00 a.m., she slipped and fell on water which had originated from the snow and ice caused by the continuous precipitation that day.

Weinkopff instituted this litigation against Mericle and defendant Charles E. Petras d/b/a Charles E. Petras Landscape Design ("Petras") who had been retained by Mericle to clear snow and ice from "all parking areas, access areas, walkways, steps, ramps, and all ingress and egress areas leading to and from the property and building" in question (See correspondence from Don Middleton to Charles E. Petras dated 11/13/06). Mericle joined RCN as an additional defendant and averred that the Mericle-RCN lease agreement obligated RCN to maintain the lobby and common areas free from liquid or other hazards. Mericle subsequently filed the instant motion for summary judgment on September 15, 2010, and following the completion of oral argument on January 5, 2011, that motion was submitted for a decision.

Relying upon *Leary v. Lawrence Sales Corp.*, 442 Pa. 389, 275 A.2d 32 (1971) and *Fitzpatrick v. Consolidated Rail Corp.*, 1991 WL 61114 (E.D. Pa. 1991), Mericle posits that the owner/lessor is generally responsible for the maintenance of common areas and passageways absent a contrary provision in the lease between the lessor and lessee (Mericle's Brief in Support, pp. 3-5). Based

upon the above-quoted language of paragraph 6 of the second amendment modifying the original lease, Mericle contends that it owed no duty to Weinkopff with regard to the condition of the lobby floor (*Id.*, p. 6). Rather, according to Mericle, Weinkopff's employer and Mericle's tenant, RCN, contractually assumed sole responsibility for the detection and removal of any moisture or liquid from the lobby floor (*Id.*).

Weinkopff advances three arguments in opposition to Mericle's summary judgment motion. First, noting that Mericle clearly had the responsibility to remove snow and ice from the exterior access and parking areas, Weinkopff asserts that her "injuries were caused by [Mericle's] negligence in the removal of snow and ice from the parking and access areas to the building, which resulted in the accumulation of ice and water in the lobby that caused [Weinkopff] to fall" (Weinkopff's Memorandum of Law, p. 7). Second, Weinkopff maintains that *Leary* and *Fitzpatrick* "are inapplicable to the case at bar because, contrary to the facts in those cases, [Mericle] did in fact retain control over snow and ice removal under the lease agreement" (*Id.*, pp. 8-9). Third, Weinkopff submits that the second amendment places responsibility upon RCN for "cleaning" the lobby, but does not "state that RCN is responsible for removing snow, water, and ice accumulation from the lobby" (*Id.*, p.9). Citing various dictionary definitions of the term "clean," Weinkopff alleges that cleaning is confined to the removal of dirt, soil or impurities and would merely "entail dusting the desk surfaces, sweeping the floor, vacuuming the mats,

and performing other typical janitorial services". (*Id.*). Arguing that "[s]now removal is an entirely different function" than "cleaning," Weinkopff avers that Mericle is not clearly entitled to judgment in its favor based upon the language of the second amendment (*Id.*).

Weinkopff's second and third arguments are best addressed in consolidated fashion since they both involve interpretation of the Mericle-RCN lease. In Pennsylvania, lease agreements are governed by contract law and general contract law principles. *Giant Food Stores, LLC v. The Silver Spring Development, L.P.*, 959 A.2d 438, 447 (Pa. Super. 2008), *app. denied*, 601 Pa. 697, 972 A.2d 522 (2009). When interpreting a contract, the court must ascertain the intent of the contracting parties, and in cases of a written contract, the parties' intent is the writing itself. *Kripp v. Kripp*, 578 Pa. 82, 90, 849 A.2d 1159, 1163 (2004). In making that determination, "[t]he accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement." *J.K. Willison v. Consolidation Coal Company*, 563 Pa. 49, 54, 637 A.2d 979, 982 (1994). Accord, *Guaranty Towers, LLC v. Cellco Partnership*, 2008 WL 5378286 at *2 (M.D. Pa. 2008).

When the language of a lease is clear and unambiguous, its meaning will be determined by its contents alone in ascertaining the intent of the parties. *Giant Food Stores*, supra. See also, *Gustine Uniontown Associates, Ltd. v. Anthony Crane Rental, Inc.*, 892 A.2d 830, 837 (Pa. Super. 2006) ("The intent of the parties to a written contract is ascertained from that writing, the contractual terms are

ascribed their ordinary meaning, and where the language is unambiguous, intent is gleaned from the language."). Contract language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *Missett v. Hub International Pennsylvania, LLC*, 6 A.3d 530, 541 (Pa. Super. 2010). "The 'reasonably' qualifier is important: there is no ambigulty if one of the two proffered meanings is unreasonable." *Trizechahn Gateway, LLC v. Titus,* 601 Pa. 637, 653, 976 A.2d 474, 483 (2009). Moreover, the reviewing court must not distort the meaning of the language used or resort to a strained contrivance in order to find an ambiguity. *D'Adamo v. Erie Insurance Exchange,* 4 A.3d 1090, 1096 (Pa. Super. 2010); *Nordi v. Keystone Health Plan West, Inc.*, 989 A.2d 376, 380 (Pa. Super. 2010). Instead, "[i]f left undefined, the words of a contract are to be given their ordinary meaning." *Kripp,* supra; *Nissley v. Candytown Motorcycle Club, Inc.*, 913 A.2d 887, 889 (Pa. Super. 2006).

As a general rule, if the owner of property leases various portions to several tenants, but retains possession and control of the common passageways and areas which are used by the tenants' invitees, the owner/lessor has the duty to maintain those common areas in a safe condition "in the absence of a contrary provision in the lease or leases." *Leary*, 441 Pa. at 392, 275 A.2d at 34; *Pagano v. Redevelopment Authority of City of Philadelphia*, 376 A.2d 999, 1007 (Pa. Super. 1977). The original Mericle-RCN lease made RCN "responsible, at its sole cost and expense, for the cleaning of the leased premises" which,

by definition, specifically excluded the lobbies, foyers, public access corridors and common areas for the first three floors. The Mericle-RCN second amendment in 2002 unquestionably expanded RCN's cleaning obligations and imposed contractual responsibi-lity upon RCN "for the cleaning of the leased premises and for the cleaning of the entire first three (3) floors of the building (including all lobbies and common areas thereto)." Therefore, the clear and unambiguous wording of the second amendment transferred Mericle's duty to safely maintain all common areas to RCN which expressly assumed the contractual obligation to clean all lobbies located on the first three floors.

Weinkopff contends that RCN's contractual responsibility for "the cleaning" of "all lobbies and common areas" of "the entire first three (3) floors" does not include snow removal which she characterizes as "an entirely different function." As phrased, Weinkopff's argument assumes that snow or ice was physically present on the lobby floor and constituted the substance upon which Weinkopff fell. However, Weinkopff has testified that she fell on water that was present on the lobby floor and which Weinkopff maintains derived from the outside precipitation (See deposition of Irene Weinkopff dated 3/16/09, pp. 66, 73-74, 76). Therefore, the proper question to be decided is whether RCN's "cleaning" duty encompassed the obligation to remove water or liquid from the lobby floor.

Common sense dictates that RCN's responsibility "for the cleaning of... all lobbies" included the obligation to

mop or eliminate any water present on the floor. The term "cleaning" may be deemed ambiguous only if Weinkopff's proffered interpretation of that word is reasonable. *Trizechahn Gateway*, supra. It is wholly unreasonable to conclude that the cleaning of a lobby excludes wiping, mopping or otherwise removing any liquid from the floor surface. Cf., *Camino v. WCAB (City Mission)*, 796 A.2d 412, 419 (Pa. Cmwlth. 2002) (referencing "[t]he janitorial-type activity of mopping and cleaning"); *Lippincott v. Marriott Management Services, Inc.*, 1999 WL 552557 at *1 (E.D. Pa. 1999) ("by virtue of defendant's responsibilities for cleaning Campbell headquarters," defendant "would clean and mop the entrance areas of Campbell's headquarters."). See also *Martino v. Great Atlantic & Pacific Tea Company*, 419 Pa. 229, 232, 213 A.2d 608, 609 (1964) (employee had duty to "keep the floor clean," and as a result, he "swept the floor and the floor was mopped.").

Even if the term "cleaning" was somehow regarded to be less than clear and unequivocal, the contracting parties' course of performance under the second amendment reflects the intent of the parties and substantiates that RCN had the exclusive duty to remove water from the lobby floor. It is an established principle of contract construction that the subsequent course of performance under the contract demonstrates the intent of the contracting parties. *Tindall v. Friedman*, 970 A.2d 1159, 1166 (Pa. Super. 2009); *South Hills Village Associates, LP v. Select Restaurants, Inc.*, 2010 WL 4340984 at *2 (W.D. Pa. 2010). Hence, when contracting parties perform pursuant to a contract, their performance establishes a common

manifestation of their understanding of the agreement and their respective contractual responsibilities. *Tindall*, supra; *Herzog v. Herzog*, 887 A.2d 313, 316, (Pa. Super. 2005) (quoting "Murray on Contracts" §88A, at 424 (3rd Ed.)).

Instantly, the deposition testimony of RCN's Senior Manager, Jeffrey Stage, confirms that RCN assumed the sole contractual responsibility for maintenance of the lobby floor in question.[1] Mr. Stage testified that RCN was "100 percent" responsible for the cleaning and mopping of the first floor lobby, including the specific area where Weinkopff allegedly fell. (Deposition of Jeffrey Stage, dated 2/23/09, pp. 10-12,26). Upon being shown paragraph 6 of the second amendment, Mr. Stage agreed that it imposed exclusive responsibility upon RCN for maintenance and cleaning of the exact site where Weinkopff claims to have fallen (*Id.*, p. 30).

In connection with RCN's cleaning duty under the

---

[1]. Mericle has also referenced the deposition testimony of its Chief Operating Officer, Lewis Sebia, and its Senior Vice President, Don Middleton, in support of its motion for summary judgment (See, Mericle's Brief in Support, pp. 5-6). Weinkopff aptly notes that the rule articulated in *Nanty-Glo Borough v. American Surety Co.*, 309 Pa. 236,163 A.523 (1932) stands for the well-settled proposition that oral testimony of the moving party or the movant's witnesses, even if uncontroverted, does not provide a sufficient basis for the entry of summary judgment because the credibility of that arguably self-serving testimony is a matter for the jury to resolve. See, *Weaver v. Lancaster Newspapers, Inc.*, 592 Pa. 458, 472, 926 A.2d 899, 907 (2007). The Nanty-Glo rule does not apply where, as here, the deposition testimony offered in support of summary judgment constitutes an adverse admission of a non-moving party. Com., Office of Atty. Gen. ex rel. *Corbett v. Richmond Township*, 2 A.3d 678, 681 (Pa. Cmwlth. 2010); *Com. Department of Environmental Resources v. Bryner*, 149 Pa. Cmwlth. 59, 65 n. 4, 613 A.2d 43, 46 n.4 (1992). Therefore, summary judgment may be granted based upon the sworn testimony of RCN's representative without violating Nanty-Glo.

second amendment, RCN contracted directly with a cleaning service and a day porter. (*Id.*, pp. 26-27). The day porter was employed from 8:00 a.m. to 1:00 p.m. each weekday and was responsible for (a) periodically inspecting the lobby floor during periods of snow and rain, and (b) "mopping" and "cleaning" that area as needed (*Id.*, pp. 42-43, 76-79). Since the county bus service was delayed on March 7, 2007 due to the snow storm, the day porter arrived late for work on the morning of Weinkopff's fall (*Id.*, p. 76). Once Mr. Stage was advised of Weinkopff's fall, he instructed the day porter to mop any water or moisture present and to "make sure" that the lobby floor was clean (*Id.*, pp. 17-18, 30-31, 43-44). Finally, in response to questioning by Petras' counsel concerning the responsibility for maintenance of the situs of Weinkopff's fall, Mr. Stage testified:

Q. The area where Mrs. Weinkopff fell, that's an area that RCN is responsible for the maintenance, is that correct, --

A. Correct.

Q. -- for inspection?

A. Correct.

(*Id.*, p. 83)

Based upon the foregoing uncontroverted testimony, the contractual course of performance by Mericle and RCN manifests a common understanding that RCN bore sole and exclusive responsibility for cleaning

and maintenance of the first floor lobby, including the mopping or removal of water or moisture. To the extent that the plain language of the second amendment did not unequivocally impose that obligation upon RCN, the parties' subsequent conduct pursuant to the lease amendment firmly establishes that RCN alone assumed and exercised that responsibility. Consequently, both the wording of the second amendment and the contracting parties' course of performance thereunder demonstrate that Mericle did not have a contractual or common law duty to remove water from the first floor lobby surface.

Equally unavailing is Weinkopff's alternate assertion that Mericle's duty to remove snow and ice from the parking and access areas somehow created potential liability for Weinkopff's fall on water in the lobby since the water originated from the exterior snow or ice. It is undisputed that there was active snowfall and generally slippery conditions at the time of Weinkopff's fall. Weinkopff testified that it was "snowing fairly heavily" during the entire morning of March 7, 2007, and that it continued to snow as she entered the Mericle building at 9:00 a.m. (Weinkopff depo. supra, at pp. 40-42, 54-55, 119). Jeffrey Stage similarly testified that there was continuous snowfall and generally slippery conditions on that morning (Stage depo., supra, at pp. 32-33, 56-57, 64).

The "hills and ridges" doctrine protects an owner of commercial property "from liability for generally slippery conditions resulting from ice and snow where the owner has not permitted the ice and snow to unreasonably accumulate in ridges or elevations." *Morin v. Traveler's*

*Rest Motel, Inc.,* 704 A.2d 1085, 1087 (Pa. Super. 1997), *app. denied,* 555 Pa. 708, 723 A.2d 1025 (1998). Stated otherwise, "there is no liability under the law for a generally slippery condition" and "[a] property owner is not required to keep his parking lot free from ice at all times, as climatic conditions would make doing so impossible." *Tucker v. Bensalem Township School District,* 987 A.2d 198,206 (Pa. Cmwlth. 2009). The hills and ridges doctrine applies to landlord-tenant situations and requires the plaintiff to prove that: (1) snow and ice had accumulated in ridges or elevations of such size and character as to unreasonably obstruct travel and constitute a danger to pedestrians; (2) the property owner had actual or constructive notice of the existence of those ridges or elevations; and (3) "it was the dangerous accumulation of snow and ice which caused the plaintiff to fall." *Biernacki v. Presque Isle Condominiums Unit Owners Association, Inc.,* 828 A.2d 1114, 1117 (Pa. Super. 2003).

The summary judgment record is devoid of any suggestion that snow or ice had accumulated in ridges or elevations of such magnitude as to obstruct travel and create a danger outside or inside Mericle's building. Similarly lacking is any indication that Mericle possessed actual or constructive notice of the presence of such ridges or elevations. More importantly, no evidence has been adduced, nor has an argument even been made, that hills, ridges or elevations of snow or ice caused Weinkopff to fall in the lobby. In the absence of such proof, Mericle's obligation to remove snow and ice from the parking and access areas cannot possibly establish liability during

general slippery conditions for Weinkopff's fall inside the building.

In short, RCN alone had the duty to clean any water or liquid that was present on the lobby floor where Weinkopff fell. There is also no triable issue of fact with respect to Mericle's lack of liability under the hills and ridges doctrine. Even when the record is viewed in the light most favorable to Weinkopff, it clearly demonstrates that Mericle is entitled to judgment as a matter of law. Accordingly, Mericle's motion for summary judgment will be granted.

And now, January 11, 2011, upon consideration of the motion for summary judgment of defendant Mericle 100 Baltimore, LLC, the memoranda of law and exhibits submitted by the parties, and the oral argument of counsel on January 5, 2011, and based upon the reasoning set forth above, it is hereby ordered and decreed that the motion for summary judgment of defendant Mericle 100 Baltimore, LLC is granted.