IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| LYNN J. HANAWAY AND CONNIE HANAWAY, | : | No. 55 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the Superior |
| Appellees | : | Court at No. 2564 EDA 2014, dated |
| | : | December 15, 2015, affirming in part |
| | : | and reversing in part the judgment of |
| v. | : | the Chester County Court of Common |
| | : | Pleas at No. 2011-01522, dated August |
| | : | 14, 2014, and remanding. |
| THE PARKESBURG GROUP, LP; PARKE | : | |
| MANSION PARTNERS, LP; SADSBURY | : | ARGUED: December 6, 2016 |
| ASSOCIATES, LP; PARKE MANSION, | : | |
| LLC; AND T.R. WHITE, INC., | : | |
| | : | |
| Appellants | : | |

## OPINION

**JUSTICE WECHT**                                              **DECIDED: August 22, 2017**

This case involves a dispute between partners of the Parkesburg Group, L.P. ("Parkesburg"), a Pennsylvania limited partnership. At issue is the applicability of the implied covenant of good faith and fair dealing to a limited partnership agreement formed pursuant to Pennsylvania's Revised Uniform Limited Partnership Act ("PRULPA").[1] The Superior Court reversed the trial court's order, which had granted

---

[1]     15 Pa.C.S. §§ 8501-94 (repealed 2016). During the pendency of this appeal, the General Assembly revised the statute, amending it on November 21, 2016, with an effective date of February 21, 2017. The amendments contain the following application provisions:

. . .

**(b) Initial application**—Before April 1, 2017, this chapter governs only:

(continued…)

partial summary judgment in favor of Parkesburg's general partner and against two of its limited partners.  We reverse the Superior Court's order in relevant part,[2] and we hold that the implied covenant of good faith and fair dealing is inapplicable to the Pennsylvania limited partnership agreement at issue, which was formed well before the enactment of amendments that codified such a covenant.[3]

---

(…continued)

> (1) a limited partnership formed on or after February 21, 2017; and
>
> (2) except as provided under subsections (c) and (d), a limited partnership formed before February 21, 2017, which elects, in the manner provided in its partnership agreement or by law for amending the partnership agreement, to be subject to this chapter.
>
> **(c) Full effective date**—Except as provided in subsections (d) and (e), on and after April 1, 2017, this chapter governs all limited partnerships.
>
> . . .

15 Pa.C.S. § 8611.

This opinion interprets the law in effect at the time the parties entered into their agreement and at the time of the alleged breach.  The parties agree that the amendments do not apply to this dispute.  The impact and interpretation of the new law (Section 8611) is not encompassed within our *allocatur* grant, and, therefore, is not part of this case.

[2]   The Superior Court affirmed the trial court's grant of summary judgment with respect to the Hanaways' tort claims for conversion and breach of fiduciary duty because the claims were time-barred.  The Superior Court also determined that the trial court's rejection of their equity claims was waived because they failed to preserve the issue.  We do not disturb these determinations.

[3]   The amendments provide, in relevant part, as follows:

> **(c) Limitations**— A partnership agreement may not do any of the following:

(continued…)

On May 21, 1998, in order to pursue a real estate investment and development project, Lynn and Connie Hanaway, T.R. White, Inc. ("T.R. White"), and several others formed a limited partnership, Sadsbury Associates, L.P. ("Sadsbury"). The Hanaways were among several limited partners of Sadsbury, while T.R. White served as the general partner. Sadsbury profitably carried out its purpose.

In 2002, acting independently from Sadsbury, T.R. White contracted for options to purchase two separate tracts of land. Specifically, in January 2002, T.R. White acquired an option to purchase, for $850,000, a 43.2-acre parcel of unimproved land, hereinafter referred to as the "Davis Tract." On September 9, 2002, T.R. White

---

(…continued)

> (11) Vary the contractual obligation of good faith and fair dealing under sections 8635(a) (relating to limited duties of limited partners) and 8649(d), except as provided in subsection (d).

15 Pa.C.S. § 8615. Subsection 8635(a), relating to limited duties of limited partners, provides as follows:

> **(a) Good faith and fair dealing**— A limited partner shall discharge any duties to the limited partnership and the other partners under the partnership agreement and exercise any rights under this title or the partnership agreement consistently with the contractual obligation of good faith and fair dealing.

15 Pa.C.S. § 8635(a). Subsection 8649(d), relating to standards of conduct for general partners, provides as follows:

> **(d) Good faith and fair dealing**— A general partner shall discharge the duties and obligations under this title or under the partnership agreement and exercise any rights consistent with the contractual obligation of good faith and fair dealing.

15 Pa.C.S. § 8649(d).

obtained an option to purchase, for $800,000, an adjacent 17-acre parcel of unimproved land, hereinafter referred to as the "Loue Tract."

On October 14, 2005, prompted by the success of Sadsbury, the partners of Sadsbury formed Parkesburg in order to implement a new residential development project involving the Davis and Loue Tracts. T.R. White served as Parkesburg's general partner, and the Hanaways were among several limited partners.[4] Parkesburg's limited partnership agreement gave T.R. White broad discretion to carry out its duties. Pursuant to the express terms of the agreement, T.R. White, as the general partner, controlled "the business and affairs of the Partnership." Parkesburg Limited Partnership Agreement ¶6.1. The business of the partnership included "[r]eal [e]state investment and development" as well as "all other acts and things which may be necessary, incidental or convenient" to carry on the business of the partnership. *Id.* at ¶2.1. The agreement provided T.R. White with "full, exclusive and complete discretion in the management and control of the business of the Partnership[.]" *Id.* at ¶6.2. Additionally, T.R. White had the absolute right "to cause [Parkesburg] (i) to execute and deliver any contract, amendment, supplement or other document relating to the Business and (ii) subject to the terms of this Agreement, to exercise the rights and fulfill the obligations of the Partnership under the applicable law[.]" *Id.* at ¶6.5. The Agreement did not confer management authority on Parkesburg's limited partners.

The parties referred to the Parkesburg development project as the Subdivision. In addition to developing the Davis and Loue Tracts, Parkesburg's plan for the Subdivision included an adjacent quarry, which the Hanaways owned. Parkesburg had acquired a $180,000 option to purchase the quarry from the Hanaways. On May 6,

---

[4]    The Hanaways held a 32.4 percent ownership interest in Parkesburg.

2006, Parkesburg acquired the option to purchase the Davis Tract. On July 11, 2006, Parkesburg exercised its option, purchasing the tract for $1,024,000.

On February 21, 2007, the Hanaways informed T.R. White that the option to purchase the quarry from them had expired and that they were unwilling to include it in the Subdivision. They also refused to contribute any additional capital toward the project. This change of heart forced Parkesburg to restructure and obtain new approvals for a development plan that excluded the quarry. Because the Hanaways were unwilling to contribute additional capital to continue developing the Subdivision, the remaining limited partners became reluctant to contribute as well.[5] Lacking capital and financially restrained from proceeding, Parkesburg's development of the Subdivision stalled. With the option on the Loue Tract approaching its expiration date, T.R. White acted to save the development project and its investment. On September 25, 2007, T.R. White informed the Hanaways that, upon obtaining a third party fair market value appraisal, it intended to sell the Davis Tract and the option for the Loue Tract contemporaneously.

The crux of this dispute concerns Parkesburg's sale of the Davis Tract and the Loue Tract option to a newly formed limited partnership, Parke Mansion Partners ("PMP"). With the exception of the Hanaways, all of Parkesburg's limited partners were also partners of PMP. On November 29, 2007, Parkesburg assigned the option to purchase the Loue Tract to PMP for $10. PMP subsequently exercised this option, purchasing the Loue Tract for $800,000. On September 5, 2008, Parkesburg sold the Davis Tract to PMP for $1.9 million. Having purchased the Davis and Loue Tracts, PMP planned to continue developing the Subdivision without the Hanaways.

---

[5] The Parkesburg limited partnership agreement did not require the limited partners to contribute capital.

On February 11, 2011, more than two years after PMP had purchased the disputed land from Parkesburg, the Hanaways commenced this litigation by filing a six-count complaint against T.R. White, PMP, Parkesburg, and Sadsbury. Of relevance, the Hanaways averred in Count I of their complaint that T.R. White transferred the Davis Tract and the Loue Tract option to PMP for less than adequate consideration and below fair market value as part of a scheme to eliminate the Hanaways' ownership interests. Specifically, the Hanaways alleged that T.R. White, as general partner, breached Parkesburg's limited partnership agreement. They viewed the sale of the Parkesburg tracts to PMP as a sham, executed to freeze them out of Parkesburg.

T.R. White filed a motion for partial summary judgment, arguing that the Hanaways' breach of contract claim failed as a matter of law because the Hanaways did not identify a specific term of the Parkesburg limited partnership agreement that T.R. White had breached. *See* T.R. White's Motion for Partial Summary Judgment, 07/01/2013, ¶ 64. In response, the Hanaways expounded upon their initial breach of contract claim, contending that T.R. White had breached the implied covenant of good faith and fair dealing. *See* The Hanaways' Answer to Motion for Partial Summary Judgment, 8/06/2013, ¶46. The trial court granted summary judgment as to the contract claim, agreeing with T.R. White that the Hanaways had failed to identify a specific term of the limited partnership agreement that had been breached.[6] The trial court also

---

[6] In addition to the breach of contract claim, the Hanaways had asserted the following five counts in their complaint: (1) request for an accounting, (2) appointment of a receiver, (3) alternate equitable relief, (4) breach of fiduciary duty, and (5) conversion. In addition to seeking summary judgment as to the contract claim, T.R. White moved for summary judgment with respect to the Hanaways' conversion and breach of fiduciary duty claims. The trial court granted the motion.

The trial court subsequently presided over a four-day bench trial to address the Hanaways' three remaining claims. The trial court ruled in favor of T.R. White as to all claims. The Hanaways appealed to the Superior Court, challenging the trial court's
(continued…)

observed that the Parkesburg limited partnership agreement unequivocally provided T.R. White, as the general partner, with complete and exclusive discretion to manage the partnership. According to the court, the implied covenant of good faith and fair dealing could not override such clear language. *See* Trial Court Order, 1/23/2014, at 3.

The Hanaways appealed the trial court's order to the Superior Court. A divided panel of the Superior Court reversed the trial court's order granting partial summary judgment with respect to the contract claim, and concluded that T.R. White was obliged to discharge its duties under the limited partnership agreement in good faith. *Hanaway v. Parkesburg Grp., L.P.*, 132 A.3d 461 (Pa. Super. 2015). The majority adopted the Restatement (Second) of Contracts Section 205[7] and, in doing so, considered several cases in which courts have applied the concept of good faith in the contract setting.[8] In

---

(…continued)
decision as to all six counts. The Superior Court reversed the trial court's order granting summary judgment as to the breach of contract claim, but affirmed the trial court as to all other issues. The scope of our *allocatur* grant pertains only to the trial court's and Superior Court's treatment of the breach of contract claim.

[7] The Restatement (Second) of Contracts Section 205 provides that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205 (1981).

[8] *See Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418 (Pa. 2001) (finding, without referencing Section 205 of the Restatement, that parties to an employment contract had to perform their contractual duties (relating to an internal review process) in good faith prior to a professor's forfeiture of tenure); *Herzog v. Herzog*, 887 A.2d 313, 317 (Pa. Super. 2005) (applying the Restatement (Second) of Contracts Section 205 to impose a duty of good faith and fair dealing upon parties to a marriage settlement agreement); *Conomos, Inc. v. Sun Co.*, 831 A.2d 696, 708 (Pa. Super. 2003) (explaining that the implied covenant of good faith and fair dealing "serve[s] to imply terms that the parties would have spelled out had they foreseen their need, a breach of such implied terms is equivalent to a breach of any other provision in the contract"); *Somers v. Somers,* 613 A.2d 1211 (Pa. Super. 1992) (applying a general duty to act in good faith to a consulting agreement); *Baker v. Lafayette College*, 504 A.2d 247 (Pa. Super. 1986) (finding a college had an obligation to conduct, in good (continued…)

light of its review of precedent, the Superior Court perceived no reason to treat limited partnership agreements differently than any other type of contract. The majority also opined that the Hanaways' breach of the covenant of good faith and fair dealing claim was a breach of contract action, not an independent action for breach of a duty of good faith.

To bolster its holding, the Superior Court majority examined Delaware law, which recognizes an implied covenant of good faith and fair dealing with respect to limited partnership agreements formed pursuant to Delaware's Revised Uniform Limited Partnership Act ("DRULPA"). DEL. CODE title 6, 17-101-1111. The majority noted that DRULPA permits parties to a limited partnership agreement to contractually "expand, restrict, or eliminate any fiduciary duties that a person may owe." *Hanaway*, 132 A.3d at 473 (quoting DEL. CODE title 6, 17-1101(d)). The majority found it significant that DRULPA forbids contracting parties from waiving the implied covenant of good faith and fair dealing. To that end, the majority reasoned that, in Delaware, "the implied covenant of good faith and fair dealing provides a viable alternate remedy in contract where the fiduciary duty has been restricted." *Hanaway,* 132 A.3d at 473. The Superior Court found a Delaware Supreme Court case persuasive, *see Gerber v. Enterprise Products Holdings, L.L.C.,* and incorporated aspects of the *Gerber* court's analysis into its own opinion.[9] Drawing from *Gerber*, the Superior Court reasoned that, in this situation, as in *Gerber* and under Delaware law, parties to a limited partnership agreement owe a duty

(…continued)
faith, a comprehensive evaluation and review process pursuant to an employment contract).

[9]     *See Gerber*, 67 A.3d 400 (Del. 2013) (overruled on other grounds by *Winshall v. Viacom Intern., Inc.*, 76 A.3d 808 (Del. 2013)). The Superior Court majority in the case *sub judice* observed that, in *Winshall*, the Delaware Supreme Court confined the contours of the implied covenant of good faith. *Hanaway*, 132 A.3d at 474.

to exercise managerial discretion in good faith, a duty that cannot be eliminated contractually. The majority remanded the breach of contract claim to the trial court to consider whether T.R. White acted in bad faith in performing its managerial duties under the limited partnership agreement.

From a dissenting posture, then-Judge, now Justice, Donohue opined that the implied covenant of good faith and fair dealing could not save the Hanaways' defective breach of contract claim. In her view, the implied covenant of good faith and fair dealing does not apply to limited partnership agreements because limited partnerships are unique "creatures of the legislature" that must comport with PRULPA. *Hanaway*, 132 A.3d at 477 (Donohue, J., dissenting). Then-Judge Donohue explained that "[t]he rights, duties, and liabilities of the partners in a limited partnership formed in [Pennsylvania and Delaware] are governed, first and foremost, by . . . legislative acts." *Id.*

The dissent traced the evolution of both PRULPA and DRULPA, stressing the critical distinctions between the acts. Notably, the dissent emphasized that, at the relevant time, PRULPA, unlike DRULPA, prioritized contractual freedom, as evidenced by the fact that it provided parties with the freedom to contract—a statutory right unencumbered by any limitations. *See* 15 Pa.C.S. § 8520(d) (repealed 2016).

Because the majority discussed Delaware law extensively, the dissent made it a point to discuss why the majority's reliance upon Delaware law contained major flaws. The dissent observed that Delaware adopted its own version of the Revised Uniform Limited Partnership Act of 1976 ("Model Act") in 1982. Pennsylvania followed suit in 1988. Then-Judge Donohue observed that the Model Act initially lacked any reference to the implied covenant of good faith and fair dealing. Similarly, at their inception, neither DRULPA nor PRULPA contained such a reference. In 2001, however, when a

revised Model Act was published, it incorporated specific provisions indicating that parties to a limited partnership agreement owe one another the implied duty of good faith and fair dealing. In 2004, Delaware amended its act to add similar, but not verbatim, language. Then-Judge Donohue highlighted the fact that Pennsylvania never updated PRULPA to conform to the Model Act. Instead, the General Assembly incorporated Section 8520(d) into PRULPA, suggesting a departure from the Model Act. Finally, then-Judge Donohue observed that the Hanaways had available tort remedies through which they could have obtained relief, and she criticized them for failing to timely pursue these viable remedies.

T.R. White sought discretionary review in this Court. We granted *allocatur* to consider whether the implied covenant of good faith and fair dealing applies to all limited partnership agreements formed in Pennsylvania, and, if so, whether the implied duty of good faith and fair dealing can override the express terms of a limited partnership agreement.

T.R. White observes that neither this Court, nor any Pennsylvania statutory provision in effect at the time that the parties formed Parkesburg, directed that the implied covenant of good faith and fair dealing applied to limited partnership agreements. T.R. White espouses then-Judge Donohue's dissenting position, emphasizing that limited partnership agreements are unique and ill-suited for application of the implied covenant of good faith and fair dealing because they are governed by statute. Accordingly, T.R. White contends that limited partnership agreements should not be treated like other types of contracts. T.R. White argues that the Superior Court majority's reasoning is flawed because the court ignored the crucial differences between Pennsylvania law and Delaware law. To that end, T.R. White agrees with then-Judge Donohue's observations that DRULPA, unlike PRULPA, expressly mentions the implied

covenant of good faith and fair dealing. T.R. White stresses the fact that DRULPA was amended in 2004 to align with the Model Act, whereas PRULPA evinced unfettered freedom to contract through Section 8520(d). Additionally, T.R. White argues that Delaware law simply cannot serve as a model for Pennsylvania limited partnerships on this issue, because the two states contain different statutes of limitations periods. Specifically, contract claims in Pennsylvania enjoy a longer statute of limitations.

T.R. White directs our attention to House Bill 1398, which Governor Wolf signed into law on November 21, 2016, as Act 170. This new legislation, in relevant part, amends PRULPA to require that partners discharge their duties consistent with the contractual obligation of good faith and fair dealing.[10] According to T.R. White, this drastic change is evidence that the Superior Court has exceeded its authority in the instant case by taking it upon itself to rewrite the law. While T.R. White concedes that the implied covenant of good faith and fair dealing exists going forward, T.R. White asserts that it did not exist at the time that the parties formed Parkesburg and entered into a limited partnership agreement.

T.R. White stresses that the terms of Parkesburg's limited partnership agreement clearly provided T.R. White with exclusive managerial authority. Permitting the Hanaways to invoke the implied covenant of good faith and fair dealing contradicts the intent of the parties and the unambiguous language of their agreement. T.R. White maintains that the Hanaways take issue merely with the unfettered discretionary power

---

[10] The amendments provide, in relevant part, that "[a] general partner shall discharge the duties and obligations under this title or under the partnership agreement and exercise any rights consistent with the contractual obligation of good faith and fair dealing." 15 Pa.C.S. § 8649(d). Additionally, pursuant to the amendments, a partnership agreement may not "[v]ary the contractual obligation of good faith and fair dealing[.]" 15 Pa.C.S. § 8615.

that they voluntarily entrusted to the general partner.[11]  Finally, T.R. White asserts that the Hanaways are only now advancing a breach of contract claim, rooted in the implied duty of good faith and fair dealing, because they did not file their tort claims within the two-year statute of limitations, and because they failed to identify a specific term of the Parkesburg limited partnership agreement that T.R. White had breached.  Because they sat on their rights, the Hanaways crafted an argument based upon the implied duty of good faith and fair dealing in order to avoid the statute of limitations governing tort claims.

The Hanaways urge this Court to adopt the Superior Court's reasoning.  They argue that the implied covenant of good faith applies to all contracts formed in Pennsylvania, including the 2005 Parkesburg limited partnership agreement.  They claim that, because Delaware law and *Gerber* are comparable, the same principles should be applied to the facts of the instant case.

Contrary to T.R. White's argument, the Hanaways emphasize that DRULPA does not expressly *create* an implied covenant of good faith and fair dealing.  Rather, DRULPA "merely prevents the partners from abrogating the duty[,] which attaches generally under Delaware common law."  Appellees' Brief at 17.  Accordingly, the Hanaways suggest that PRULPA and DRULPA are not entirely distinct.[12]  They contend that limited partnership agreements should be treated like any other type of contract, and they urge this Court to hold that the General Assembly intended to import Section 205 of the Restatement of Contracts into Pennsylvania's Limited Partnership Act.

---

[11]    T.R. White also counters that it should be able to carry out its obligations relating to the business of the partnership without fear of being second guessed by a jury.

[12]    On this point, T.R. White countered in a reply brief that, prior to Act 170, PRULPA was silent as to the implied covenant of good faith.  DRULPA references the duty in a way that Pennsylvania previously had not.

According to the Hanaways, the fact that they did not pursue available tort remedies is irrelevant, because an action premised upon the implied covenant of good faith and fair dealing is a breach of contract claim, not an independent cause of action or a tort claim. They contend that the implied covenant of good faith and fair dealing never overrides express contract language. Instead, it merely infuses the performance of duties pursuant to an agreement and attaches to existing contract obligations.

We review a trial court's order granting summary judgment for an error of law or an abuse of discretion. *Gilbert v. Synagro Cent., LLC*, 131 A.3d 1, 10 (Pa. 2015). A party is entitled to summary judgment if the record clearly demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* Any doubts as to the existence of a genuine issue of material fact must be resolved in favor of the non-moving party. *Id.* Whether the implied covenant of good faith and fair dealing may be implicated in all limited partnership agreements formed pursuant to Pennsylvania law is a question of law as to which we apply a *de novo* standard of review. We note that, "when interpreting a statute we must listen attentively to what the statute says, but also to what it does not say." *Johnson v. Lansdale Borough*, 146 A.3d 696, 711 (Pa. 2016). In other words, "it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." *Commonwealth v. Johnson*, 26 A.3d 1078, 1090 (Pa. 2011).

Preliminary, we note that, after the Superior Court issued its decision in the underlying case and just prior to oral argument before this Court, the General Assembly enacted Act 170. The new legislation amended PRULPA to expressly state, *inter alia*, that limited and general partners must discharge their duties consistent with the contractual obligation of good faith and fair dealing. Because this case precedes Act 170, we must consider whether the duty of good faith and fair dealing applied at the

time that the parties formed Parkesburg in 2005 or at the time that an alleged breach arose in 2008. For the reasons that follow, we hold that it did not apply at either juncture.

PRULPA governs all limited partnerships formed in Pennsylvania. 15 Pa.C.S §§ 8501, *et seq.* (repealed by Act of Nov. 21, 2016, P.L. 1328, No. 170). To form a Pennsylvania limited partnership, parties must comply with PRULPA's statutory directives. PRULPA defined a limited partnership as "[a] partnership formed by two or more persons under the laws of this Commonwealth and having one or more general partners and one or more limited partners." 15 Pa.C.S. § 8503 (repealed 2016). PRULPA also defined a partnership agreement as "[a]ny agreement, written or oral, of the partners as to the affairs of a limited partnership and the conduct of its business." *Id.* In order to form a limited partnership, PRULPA requires execution and filing of a certificate of limited partnership in the Department of State. 15 Pa.C.S. § 8511 (repealed 2016). The certificate must set forth certain information delineated in Subsection 8511(a). Because the existence of a limited partnership is dependent upon compliance with PRULPA, failure to conform to its various statutory provisions could lead to exposure to unwanted liabilities.

At the time the parties formed Parkesburg, Section 8520 of PRULPA governed limited partnership formation and partnership agreements. It contemplated broad freedom of contract:

> **(d) Freedom of contract.**—A written partnership agreement may contain any provision for the regulation of the internal affairs of the limited partnership agreed to by the partners, whether or not specifically authorized by or in contravention of this chapter, except where this chapter:
>
> > (1) refers only to a rule as set forth in the certificate of limited partnership; or

(2) expressly provides that the partnership agreement shall not relax or contravene any provision on a specified subject.

15 Pa.C.S. § 8520(d) (repealed 2016).

The Parkesburg limited partnership agreement conferred absolute discretionary authority upon T.R. White, as follows:

6.1. Except as specifically provided in this Agreement, the business and affairs of the Partnership shall be controlled by the General Partner.

6.2. The General Partner **shall have full, exclusive and complete discretion in the management and control of the business of the Partnership**, and shall have all such other powers of a general partner in a partnership formed under Pennsylvania law without limited partners, the exercise of which are consistent with the Business of the Partnership.

Parkesburg LPA ¶¶6.1-6.2 (emphasis added).

According to the agreement, the purpose of the partnership was to pursue "[r]eal [e]state investment and development." *Id.* at ¶2.1.1. The agreement provided that "the General Partner shall have the right, upon such terms and conditions as it, in its sole and absolute discretion, may deem advisable . . . to cause the Partnership . . . to execute and deliver any contract, amendment, supplement or other document relating to the Business[.]" *Id.* at ¶¶6.5, 6.5.1. The Parkesburg agreement stated that "[t]he Limited Partners shall take no part in the management, shall not contribute any services to the Partnership and shall have no authority to act on behalf of, or to bind, the Partnership." *Id.* at ¶6.6.

This Court has never addressed the applicability of the implied covenant of good faith and fair dealing in the context of limited partnership agreements. Like then-Judge Donohue, we find it helpful to consider the evolution of PRULPA. The Model Act, which has served as a paradigm for most states drafting their own versions of the limited partnership act, initially did not reference the implied covenant of good faith and fair

dealing. It was not until 2001 that a new, revised Model Act incorporated the contractual obligation of good faith and fair dealing. Specifically, Sections 110, 305, and 408 were updated to prevent parties from eliminating the obligation and to require parties to discharge duties in good faith. *See* Limited Duties of Limited Partners., Unif. Ltd. Part. Act 2001 §§ 110(b)(7), 305(b), and 408(d).[13] Three years after the Model Act was revised in 2001, DRULPA was amended to correspond with the Model Act.[14]

---

[13] Presently, the Model Act references the duty in subsection 305(a), regarding the limited duties of limited partners, and in subsection 409(d), regarding the standards of conduct for general partners. In a comment to Section 409, the authors of the Model Act explained that, by referring to the contractual obligation of good faith and fair dealing, it intended to invoke the implied obligation embedded in the Restatement (Second) of Contracts Section 205.

[14] Subsections 17-1101(d)-(f) of the Delaware Code provide:

(d) To the extent that, at law or in equity, a partner or other person has duties (including fiduciary duties) to a limited partnership or to another partner or to another person that is a party to or is otherwise bound by a partnership agreement, the partner's or other person's duties may be expanded or restricted or eliminated by provisions in the partnership agreement; provided that the partnership agreement may not eliminate the implied contractual covenant of good faith and fair dealing.

(e) Unless otherwise provided in a partnership agreement, a partner or other person shall not be liable to a limited partnership or to another partner or to another person that is a party to or is otherwise bound by a partnership agreement for breach of fiduciary duty for the partner's or other person's good faith reliance on the provisions of the partnership agreement.

(f) A partnership agreement may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties) of a partner or other person to a limited partnership or to another partner or to another person that is a party to or is otherwise bound by a partnership agreement; provided, that a partnership agreement may not limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing.

DEL. CODE. title 6, 17-1101.
(continued…)

Before Act 170, Pennsylvania's General Assembly never similarly modernized PRULPA to correspond with the revised Model Act of 2001. Instead, the General Assembly enshrined the freedom to contract through Subsection 8520(d), conveying a legislative will starkly different from that expressed in the Model Act and DRULPA.[15] When the parties formed Parkesburg, PRULPA contained certain mandates, but beyond that, Subsection 8520 expressly provided them with unrestrained freedom to contract. Neither PRULPA nor the Parkesburg limited partnership agreement contained any restrictions on the ability of the general partner to carry out its obligations. By the terms of the agreement and Subsection 8520(d), T.R. White had unfettered discretion to fulfill its business obligations and duties, without fear of being second-guessed by a court.

PRULPA's silence with respect to the duty of good faith and fair dealing, the fact that PRULPA expressly provided parties with contractual freedom, and the clear terms of the Parkesburg limited partnership agreement reveal to us that the implied covenant of good faith and fair dealing did not apply as a matter of law. This is a case in which a party failed to secure desirable contractual protections during negotiation of a limited partnership agreement.[16] The Hanaways had the opportunity to bargain for specific protections without having to rely upon implicit concepts.

In support of its holding, the Superior Court majority examined several decisions from this Court and from Pennsylvania's intermediate appellate courts that have applied the implied covenant of good faith and fair dealing in certain circumstances. For instance, in *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418 (Pa. 2001), this

_____

(…continued)

[15]  Notably, Act 170 repealed Section 8520. In its place is a contractual obligation to discharge duties in good faith. 15 Pa.C.S. § 8649(d) (effective Feb. 21, 2017).

[16]  The Hanaways also had viable tort remedies which they failed to timely pursue.

Court considered an employment contract, which provided an internal, judicial-like review process prior to a professor's forfeiture of tenure. This Court determined that such an internal review process accorded due process so long as the University performed its duties under the contract in good faith. In addition to *Murphy*, the Superior Court in this case found several intermediate appellate court cases to be instructive. *See Somers*, 613 A.2d 1211; *Baker,* 504 A.2d 247; *Conomos, Inc.*, 831 A.2d 696; *Herzog,* 887 A.2d 313, *supra*.

This Court in *Murphy*, as well as the intermediate appellate courts in the foregoing cases, analyzed various contracts through a good faith lens. Some of the cases went as far as to adopt Section 205 of the Restatement (Second) of Contracts outright. *See Herzog*, 887 A.2d at 317; *Conomos, Inc.*, 831 A.2d at 705-706. Here, the Superior Court relied upon these authorities to conclude that the implied duty of good faith extends to limited partnership agreements as well. The factual circumstances of the referenced cases contain a critical distinction: the contracts at issue were not governed by statute. Accordingly, we cannot endorse the Superior Court's extension of these cases to the instant dispute.

Consistent with then-Judge Donohue's astute observations, we note that PRULPA governs limited partnership agreements, whereas the Uniform Commercial Code ("UCC") governs commercial contracts. Commercial contracts formed under the UCC must conform to its statutory provisions. Significantly, unlike the version of PRULPA that was in effect during the relevant time period, the UCC explicitly references the duty of good faith. It defines "good faith"[17] and requires parties to

---

[17] *See* 13 Pa.C.S. § 1201 (defining "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing").

perform their duties and to enforce commercial contracts in good faith.[18]  Moreover,

under the UCC, a breach of the duty of good faith does not create a separate cause of

action.  Comment one of Section 1304 provides as follows:

> This section does not support an independent cause of action for failure to perform or enforce in good faith.  Rather, this section means that a failure to perform or enforce, in good faith, a specific duty or obligation under the contract, constitutes a breach of that contract or makes unavailable, under the particular circumstances, are medial right or power.  This distinction makes it clear that the doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced, and does not create a separate duty of fairness and reasonableness which can be independently breached.

13 Pa.C.S. § 1304 (cmt 1).

The General Assembly intentionally imposed an affirmative good faith

requirement upon parties to commercial contracts.  Although it could have similarly

referenced the duty of good faith in PRULPA, it chose not to do so.  *See City of Phila. v.

Int'l. Ass'n of Firefighters, Loc. 22*, 999 A.2d 555, 566 (Pa. 2010) (explaining that "we

.  .  .  presume that when enacting legislation, the General Assembly is familiar with

extant law).  Until Act 170, "the legislature did not see fit to include" such a provision,

and "it is not for the courts to add, by interpretation, to a statute, a requirement which

the legislature did not see fit to include."  *Johnson*, 26 A.3d at 1090.[19]

At oral argument, the Hanaways asserted that Act 170 serves only to *confirm* the

existence of the duty of good faith and fair dealing in the context of limited partnership

---

[18]     *See* 13 Pa.C.S. § 1304 (providing that "[e]very contract or duty within this title imposes an obligation of good faith in its performance and enforcement").

[19]     The Hanaways seem to believe that a legislative pronouncement is unnecessary, but they ignore the fact that the UCC expressly recognized such a duty.

agreements. They claim that, through the amendments, the General Assembly has merely codified an obligation that existed all along. We disagree.[20] "We cannot discern the legislative intent of the General Assembly that passed the relevant, prior version of the . . . statute by examining the intent of the General Assembly that amended that statute." *Commonwealth v. Lynn*, 114 A.3d 796, 827 (Pa. 2015).[21]

Prior to Act 170, there was no duty of good faith applicable to limited partnership agreements formed pursuant to PRULPA. Because the duty of good faith and fair dealing did not exist at the time that the parties entered into the Parkesburg limited partnership agreement, and because it did not exist at the time that an alleged breach occurred, it is unnecessary to address T.R. White's second inquiry—whether the implied duty of good faith and fair dealing can override the parties' express contract terms.[22]

---

[20]   We reiterate the fact that the General Assembly passed Act 170 during the pendency of this legislation, thereby amending the law. *See* Subsection 8649(d), providing:

> **(d) Good faith and fair dealing**— A general partner shall discharge the duties and obligations under this title or under the partnership agreement and exercise any rights consistent with the contractual obligation of good faith and fair dealing.

15 Pa.C.S. § 8649(d) (effective Feb. 21, 2017). Through Act 170, the General Assembly also deleted Subsection 8520(d) relating to freedom to contract.

[21]   This tenet, as articulated by the Court in *Lynn*, undermines the Dissent's reliance upon the amendments to support its interpretation of a prior law. *See* Dissenting Op. at 3.

[22]   We recognize that T.R. White expressed concern regarding the scope and confines of the term "good faith," characterizing it as a concept that is "shrouded in mystery." Appellant's Brief at 13 (quoting Thomas Diamond & Howard Foss, *Proposed Standards for Evaluating When the Covenant of Good Faith and Fair Dealing Has Been Violated*: *A Framework for Resolving the Mystery*, 47 HASTINGS L.J. 585, 585-86 (1996)). In light of our holding, we need not define the specific parameters or set forth any criteria for applying the implied duty of good faith.

The trial court did not err in granting T.R. White's motion for summary judgment. The order of the Superior Court is reversed.

Chief Justice Saylor and Justices Todd and Dougherty join the opinion.

Justice Mundy files a dissenting opinion in which Justice Baer joins.

Justice Donohue did not participate in the consideration or decision of this case.