J-A10023-17

2017 PA Super 380

| | |
|---|---|
| RETINA ASSOCIATES OF GREATER PHILADELPHIA, LTD., JONATHAN B. BELMONT, M.D., ROBERT C. KLEINER, M.D. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| RETINOVITREOUS ASSOCIATES, LTD. D/B/A MID ATLANTIC RETINA, WILLIAM BENSON, M.D., JAY L. FEDERMAN, M.D., GARY C. BROWN, M.D., MITCHELL S. FINEMAN, M.D., DAVID H. FISCHER, M.D., SUNIR J. GARG, M.D., ALLEN C. HO, M.D., RICHARD KAISER, M.D., ALFRED C. LUCIER, M.D., JOSEPH I. MAGUIRE, M.D., J. ARCH MCNAMARA, M.D., CARL H. PARK, M.D., CARL D. REGILLO, M.D., ARUNAN SIVALINGAM, M.D., WILLIAM TASMAN, M.D., JAMES F. VANDER, M.D., AND JASON HSU, M.D. | |
| | No. 3265 EDA 2016 |

Appeal from the Order Dated July 2, 2010
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 09-32182

BEFORE: DUBOW, J., SOLANO, J., and FORD ELLIOTT, P.J.E.

OPINION BY SOLANO, J.: **FILED DECEMBER 07, 2017**

Appellants Retina Associates of Greater Philadelphia, Ltd. ("Retina"), and two of its physicians — its President, Jonathan B. Belmont, M.D. and Vice President, Robert C. Kleiner, M.D. (together, "Retina Physicians") — appeal from the order sustaining preliminary objections in the nature of a demurrer filed by Appellees William Benson, M.D., Jay L. Federman, M.D.,

Gary C. Brown, M.D., Mitchell S. Fineman, M.D., David H. Fischer, M.D., Sunir J. Garg, M.D., Allen C. Ho, M.D., Richard Kaiser, M.D., Alfred C. Lucier, M.D., Joseph I. Maguire, M.D., J. Arch McNamara, M.D., Carl H. Park, M.D., Arunan Sivalingam, M.D., William Tasman, M.D., James F. Vander, M.D., and Jason Hsu, M.D. (collectively, "Mid Atlantic Physicians"), all of whom are alleged to be "members and/or employees" of Appellee Retinoviteous Associates, Ltd., doing business as Mid Atlantic Retina ("Mid Atlantic"). We reverse.

Because the trial court disposed of this case on preliminary objections, we adopt the facts as alleged in Appellants' amended complaint and its exhibits. *Khawaja v. RE/MAX Central*, 151 A.3d 626, 630 (Pa. Super. 2016).

Retina and Mid Atlantic are competing practices of retina specialists who have staff privileges at Wills Eye Hospital in Philadelphia. In 2000, several retina specialists formed Retina Diagnostic & Treatment Associates, LLC ("RDTA"), a limited liability company that entered into contracts with Wills Eye to provide its members — who ultimately included both the Retina Physicians and the Mid Atlantic Physicians — with special privileges at Wills Eye's facilities.[1] Pursuant to RDTA's operating agreement, each RDTA

_____

[1] Paragraph 25 of the amended complaint alleged:

The professional and financial benefits of RDTA membership to [Appellants] included, but were not limited to:

*(Footnote Continued Next Page)*

- 2 -

member owned an equal 5.263% interest in the company.  The operating

agreement provided that RDTA would be run by up to six managers,[2] each of

whom had to be a member of RDTA and one of whom had to be "the

_(Footnote Continued)_ ————————————

> a.    A contract with Wills Eye to be the exclusive provider of retinal care at its facility.
>
> b.    An academic supervision and teaching agreement, which provided the members of RDTA with an exclusive contract to provide academic supervision and teaching to both ophthalmology residents and retinal fellows.
>
> c.    An exclusive provider agreement with Wills Eye to provide on-call retinal coverage and services to the Wills Eye emergency room.
>
> d.    A private patient teaching agreement for teaching residents and fellows treating private patients.
>
> e.    A contract between Wills Eye and RDTA, establishing RDTA as the sole provider of retinal photography and retinal angiography at Wills Eye.
>
> f.    A contract between RDTA and Wills Eye Ophthalmology Clinic . . . for outpatient clinical services.

[2] The operating agreement is an exhibit to the amended complaint.  Section 5.01(a) of the agreement provided:

> Exclusive Responsibility. Except as otherwise expressly provided herein, (i) the management of the business and affairs of the Company shall be the sole and complete responsibility of the Managers, (ii) a Member, as such, shall not take part in, or interfere in any manner with, the management, conduct or control of the business and affairs of the Company, and shall not have any right or authority to act for or bind the Company, and (iii) the Company may act only by actions taken by or under the direction of the Managers in accordance with this Agreement. Individual Managers shall have only such authority and perform such duties as the Managers may, from time to time, delegate to such individual Managers.

Third Am. and Restated Limited Liability Co. Operating Ag. of RDTA, 1/1/2006, at 10.

physician who is the then Director of the Retina Service of Wills Eye Hospital." Third Am. and Restated Limited Liability Co. Operating Ag. of RDTA, 1/1/2006, at 10. Appellants alleged that at the time the amended complaint was filed, Appellee Brown held the position of Director and Appellees Fischer and Sivalingam were Co-Directors of the Wills Eye Retina Service. Am. Compl. ¶¶ 14-15.

Although the operating agreement provided that RDTA would be run exclusively by its managers, it contained provisions for some extraordinary decisions to be made by RDTA's members. Section 6.06 of the agreement stated:

> Certain Company Matters Requiring Member Approval.
>
> (a) Specific Matters. Notwithstanding anything in this Agreement to the contrary, the approval of the following matters shall require the affirmative vote of the Members by a Majority Vote:
>
> . . .
>
> (v) The sale, exchange or transfer of all; or substantially all, of the assets of the Company.
>
> . . .
>
> (viii) The dissolution of the Company pursuant to Section 10.01(i). . . .

Third Am. and Restated Limited Liability Co. Operating Ag. of RDTA, at 15.

On March 31, 2009, fifteen of the Mid Atlantic Physicians (all but Appellees Benson and Park), acting as members of RDTA, adopted a resolution titled "Written Consent of the Members Holding a Majority of the

- 4 -

Percentage Interests." Am. Compl. ¶ 27 & Ex. D. The fifteen signers "collectively held a majority of the percentage interests in RDTA." *Id.* ¶ 27. By their resolution, the signers provided for RDTA to sell substantially all of its assets to Mid Atlantic and then to liquidate and dissolve. The two Retina Physicians did not vote on the resolution (which did not contain signature lines for either of them), and Appellant Belmont was not given notice of it. *Id.* ¶¶ 27-28 & Ex. D.

Pursuant to the resolution, Mid Atlantic then acquired RDTA's assets, including its rights under contracts, leases, and other agreements with Wills Eye, for $353,494, a price that allegedly is below the assets' fair market value. Am. Compl. ¶¶ 31-35. RDTA also entered into agreements to purchase services from Mid Atlantic in connection with winding up RDTA's affairs, the cost of which, $107,829, would be offset against the purchase price owed to RDTA by Mid Atlantic. *Id.* ¶¶ 37-39.

Appellants instituted this action by filing a complaint on October 7, 2009. In an amended complaint, Appellants purported to state a claim for, among other things, breach of fiduciary duties by the Mid Atlantic Physicians, who "in the aggregate controlled the majority interest in RDTA." Am. Compl. ¶ 43. They alleged that, "[a]s controlling majority members, the [Mid Atlantic Physicians] owe [Appellants] a duty of utmost good faith and fair dealing" and "a quasi-fiduciary duty . . . not to use their power for selfish or personal interests or in such a way as to exclude [Appellants] from their due

- 5 -

share of the benefits accruing from the existence and operation of RDTA."

Am. Compl. ¶¶ 43-45. The pleading continued:

46. Despite these duties and obligations of utmost good faith and fair dealing imposed upon them by law, some or all of the [Mid Atlantic Physicians] breached these duties and acted exclusively in their self-interests by:

a. Excluding [Appellants] from meaningful participation in the decisions related to the [asset purchase agreement with Mid Atlantic], sale of RDTA's assets to [Mid Atlantic], and termination of [Retina's agreements with Wills Eye];

b. Self-dealing and directly or indirectly making a profit at [Appellants'] financial and professional expense by transferring and selling RDTA's assets to [Mid Atlantic] of which all [Mid Atlantic Physicians] are members and/or employees, thereby excluding [Appellants] from the benefits they enjoyed through their ownership or relationship to RDTA;

c. Failing to act in good faith and for the benefit of [Appellants], Belmont and Kleiner, and RDTA in all matters involving the sale of RDTA's assets to [Mid Atlantic];

d. Excluding [Appellants] from their rightful participation in and enjoyment of the benefits of their ownership in RDTA, including, but not limited to, the agreements with Wills Eye and the profits derived therefrom;

e. Causing [Appellants] to suffer and to continue to suffer substantial financial harm by terminating [Retina's agreements] with Wills Eye and depriving [Appellants] of sufficient access to Wills Eye to treat patients at the Wills Eye facility; and

f. Failing to act solely in the best interests of all owners and RDTA, which has caused [Appellants] to suffer and continue to suffer financial harm.

47. The actions of the [Mid Atlantic Physicians] . . . constitute a breach of their duty of utmost good faith and fair dealing owed to [Appellants], as well as a breach of their quasi-fiduciary duty

owed to [Appellants], as minority, or *de facto* minority owners of RDTA.

48. Further, the actions of the [Mid Atlantic Physicians] . . . constitute a breach of their fiduciary duties to RDTA by entering into a sales transaction for, upon information and belief, substantially less than fair market value.

49. Some or all of [Mid Atlantic Physicians] harmed [Appellants], Belmont and Kleiner, by acting in derogation of [Appellants'] rights in RDTA, including [Appellants'], Belmont and Kleiner, rights to their respective share of the benefits accruing from the existence and operation of RDTA.

50. Moreover, Defendants' substantial undervaluation of RDTA has deprived [Appellants of] their fair market share of the assets, contracts, agreements, equipment, inventory, supplies, and goodwill.

51. Some or all of [Mid Atlantic Physicians'] intentional and self-serving conduct is outrageous in that it represents a wanton and willful disregard of [Appellants'] interests and rights as well as blatant self-dealing of the most egregious kind.

52. Some or all of [Mid Atlantic Physicians] purposefully transferred all assets to [Mid Atlantic] with a reckless indifference and wanton and willful disregard of [Appellants'] financial and beneficial interests in RDTA without justification or privilege.

Am. Compl. at ¶¶ 46-52.

The trial court described the subsequent procedural history as follows:

[Mid Atlantic Physicians] filed preliminary objections to the amended complaint. Their arguments included that they did not owe a fiduciary duty to [Appellants]. They cited 15 Pa.C.S.A. § 8943(b)(2) for the proposition that members of limited liability companies do not owe fiduciary duties to each other.

After briefing and oral argument, this court issued an Order dated July 2, 2010, sustaining the preliminary objections in part and overruling them in part. Specifically, this court dismissed the breach of fiduciary duty claim against the [Mid Atlantic

Physicians] and permitted the remaining claims to move forward.

[Appellants] filed a motion for partial reconsideration, which this court denied in an Order dated August 9, 2010. Approximately six years later the case was ordered on the standby trial list for the month of October 2016. [Appellants] voluntarily dismissed their remaining claims on September 29, 2016.

Trial Ct. Op., 12/6/16, at 2-3. Appellants then filed this timely appeal from the order sustaining the Mid Atlantic Physicians' preliminary objection to the breach of fiduciary duty claim. *See* Pa.R.A.P. 341 (appeal may be filed after entry of order disposing of all claims against all parties).

In response to a court order, Appellants filed a Pa.R.A.P. 1925(b) Statement that listed, among other errors that they planned to appeal —

2. The Trial Court erred in determining, as a matter of law and/or based on the averments of the Amended Complaint and Exhibits attached thereto, that **managers** of a manager-managed Pennsylvania LLC do not owe a fiduciary duty to the minority members of said LLC and dismissing Count I (Breach of Fiduciary Duty) of the Amended Complaint as to the Physician Defendants/ Appellees.

. . .

4. The Trial Court erred in determining, as a matter of law and/or based on the averments of the Amended Complaint and Exhibits attached thereto, that it is not a breach of fiduciary duty for the **managers** of a manager-managed Pennsylvania LLC to intentionally and willfully sell substantially all of the assets and contractual rights of said LLC to a separate entity owned or controlled by the majority members of the LLC that excludes the minority members of the LLC and dismissing Count I (Breach of Fiduciary Duty) of the Amended Complaint as to the Physician Defendants/ Appellees.

- 8 -

Pa.R.A.P. 1925(b) Statement, at 1-2 (emphasis added). The Mid Atlantic Physicians objected to Appellants' inclusion in their Rule 1925(b) statement of questions regarding breach of their fiduciary duties as managers (as opposed to majority members) of RDTA, arguing that the amended complaint never stated a claim against any of them based on a status as RDTA managers. Mid Atlantic Physicians' Joint Objs. to Retina's Rule 1925(b) Statement, 11/2/16, at 1-2. They observed that the amended complaint "literally does not contain the word 'manager.'" *Id.* at 2. The trial court did not rule on the Mid Atlantic Physicians' objection to Appellants' Rule 1925(b) Statement.

On December 6, 2016, the trial court issued a Rule 1925(a) opinion that explained its decision as follows:

> The issues raised by [Appellants], when read together, challenge this court's conclusion that the individual members of the limited liability company did not owe fiduciary duties to each other. The challenge lacks statutory and decisional support.
>
> . . .
>
> Pursuant to [the Limited Liability Company Law,] 15 Pa. C.S.A. § 8943(b)(2), "[a] member [of a limited liability company] who is not a manager shall have no duties to the company or to the other members solely by reason of acting in his capacity as a member." [Appellants] argued the individual defendants owed a fiduciary duty because they collectively held a majority of the interests in RDTA. . . . The plain language of Section 8943, however, does not provide support for [Appellants'] claim that the individual defendants owed them a fiduciary duty. Thus, this court properly sustained the individual defendants' preliminary objections to the breach of fiduciary duty claim.

Trial Ct. Op., 12/6/16, at 5-6 (citation and footnotes omitted).[3]

In their appellate brief, Appellants now raise the following issues:

1. Whether the lower court erred in determining, as a matter of law, that **managers** of a manager-managed Pennsylvania LLC do not owe a fiduciary duty to the minority members of said LLC and dismissing Count I (Breach of Fiduciary Duty) of the Amended Complaint as to [Mid Atlantic Physicians]?

2. Whether the lower court erred in determining, based on the averments of the Amended Complaint and Exhibits attached thereto, that it is not a breach of fiduciary duty for **managers** of a manager-managed Pennsylvania LLC to intentionally and willfully adopt a resolution to sell substantially all of the assets and contractual rights of said LLC to a separate entity owned or controlled by the majority members of the LLC that excludes the minority members of the LLC and dismissing Count I (Breach of Fiduciary Duty) of the Amended Complaint as to [Mid Atlantic Physicians] without leave to amend?

3. Whether the lower court erred in determining, as a matter of law, that the **majority members** of a manager-managed Pennsylvania LLC do not owe a fiduciary duty to the minority members of said LLC and dismissing Count I (Breach of Fiduciary Duty) of the Amended Complaint as to [Mid Atlantic Physicians]?

4. Whether the lower court erred in determining, based on the averments of the Amended Complaint and Exhibits attached thereto, that it is not a breach of fiduciary duty for the **majority members** of a manager-managed Pennsylvania LLC to intentionally and willfully adopt a resolution to sell substantially all of the assets and contractual rights of said LLC to a separate entity owned or controlled by the majority members of the LLC that excludes the minority members of the LLC and dismissing

---

[3] The trial court added: "The amended complaint lacks any allegation of a relationship between the individual defendants and plaintiff Retina Associates of Greater Philadelphia Ltd. As such, [Appellants] should not be heard to argue on appeal that they have stated a claim for breach of fiduciary duty on behalf of Retina Associates of Greater Philadelphia Ltd." Tr. Ct. Op. at 5 n.7. The claims in this appeal have been asserted only on behalf of the Retina Physicians, and not Retina itself. *See* Appellants' Br. at 7 n.1.

Count I (Breach of Fiduciary Duty) of the Amended Complaint as to [Mid Atlantic Physicians] without leave to amend?

Appellants' Brief at 5 (emphases added). Though listed as four issues, the questions presented by Appellants all challenge the trial court's holding that, as a matter of law, the Mid Atlantic Physicians owed no duty to the Retina Physicians under the Limited Liability Company Law, either as managers of RDTA or as the majority of its members.

We address Appellants' issues under our standard of review applicable to an order sustaining preliminary objections:

> Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Khawaja*, 151 A.3d at 630 (citation omitted); *Lerner v. Lerner*, 954 A.2d 1229, 1235 (Pa. Super. 2008) ("In ruling on a *demurrer*, the court may consider only such matters as arise out of the complaint itself; it cannot supply a fact missing in the complaint"). As our Supreme Court has observed, "[t]he question presented by the demurrer is whether, on the

- 11 -

facts averred, the law says with certainty that no recovery is possible."
*Price v. Brown*, 680 A.2d 1149, 1151 (Pa. 1996) (citation omitted);
*Lerner*, 954 A.2d at 1234.

The trial court sustained the demurrer because it concluded that the Limited Liability Company Law did not impose any fiduciary or other duties on the Mid Atlantic Physicians with respect to the Retina Physicians. In determining whether the trial court erred as a matter of law in reaching this conclusion, we must engage in an analysis and interpretation of the statute. As the Supreme Court recently summarized:

> The Statutory Construction Act, 1 Pa.C.S. §§ 1901-1991, sets forth principles of statutory construction to guide a court's efforts with respect to statutory interpretation. In so doing, however, the Act expressly limits the use of its construction principles. The purpose of statutory interpretation is to ascertain the General Assembly's intent and to give it effect. 1 Pa.C.S. § 1921(a). In discerning that intent, courts first look to the language of the statute itself. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent and not look beyond the statutory language to ascertain its meaning. *See* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Courts may apply the rules of statutory construction only when the statutory language is not explicit or is ambiguous. 1 Pa.C.S. § 1921(c).
>
> . . . We must read all sections of a statute "together and in conjunction with each other," construing them "with reference to the entire statute." 1 Pa.C.S. § 1922(2). When construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections. Statutory language must be read in context, "together and in conjunction" with the remaining statutory language.

*In re Trust of Taylor*, 164 A.3d 1147, 1155 (Pa. 2017) (citations omitted).

In addition, as we recently stated in *Commonwealth v. Anderson*, 169

A.3d 1092 (Pa. Super. 2017) (*en banc*):

> Every statute shall be construed, if possible, to give effect to all its provisions. We presume the legislature did not intend a result that is absurd, impossible, or unreasonable, and that it intends the entire statute to be effective and certain. When evaluating the interplay of several statutory provisions, we recognize that statutes that relate to the same class of persons are *in pari materia* and should be construed together, if possible, as one statute.

*Id.* at 1096 (citation omitted).  Also, "when interpreting a statute we must

listen attentively to what the statute says, but also to what it does not say."

*Hanaway v. Parkesburg Grp., LP*, 168 A.3d 146, 154 (Pa. 2017) (quoted

citation omitted).

#### The Mid Atlantic Physicians' Duties as Members of RDTA

We shall begin by addressing the duties of the Mid Atlantic Physicians

as RDTA's members.

The amended complaint alleged that the Mid Atlantic Physicians signed

a resolution providing for RDTA's dissolution and the sale of all of RDTA's

assets to their own ophthalmology practice, Mid Atlantic, at a price below

market value, thereby depriving the Retina Physicians of important contract

rights and causing them financial harm.  Appellants contend that they

alleged "a classic case of oppression by the majority owners of a business

through the freeze out of the minority owners," Appellants' Br. at 30, and

that the Mid Atlantic Physicians' conduct therefore is actionable as a breach

of their duties to the minority members of RDTA under the Commonwealth's laws governing limited liability companies. Appellants acknowledge that no Pennsylvania appellate decisions have addressed this issue, but they contend that the result they advocate flows naturally from analogies to other areas of Pennsylvania corporate and business law. They state:

> Here, the majority voted to sell all of the assets of the business to another entity which they controlled, to the exclusion of the two minority members. Had the same thing happened in a closely held corporation, a partnership or a joint venture, there would be no question that the conduct is actionable and unlawful. No different result should obtain merely because the entity in question was a limited liability company. . . .

*Id.* After careful consideration, we agree.

Because limited liability companies are creatures of statute, their members are subject to only those duties that are authorized by statute. *See Hanaway*, 168 A.3d at 154-58 (general partner in limited partnership not subject to duty of good faith and fair dealing where limited partnership statute did not provide for such a duty). Here, the applicable statute is the Limited Liability Company Law of 1994, 15 Pa. C.S. §§ 8901-8993 (repealed 2016) ("the 1994 Law"). Last year, the Legislature replaced the 1994 Law with the Pennsylvania Uniform Limited Liability Company Act of 2016, 15 Pa. C.S. §§ 8811-8898, but the conduct at issue here occurred prior to enactment of the 2016 legislation and all parties agree that the 1994 Law applies to this case. *See* 15 Pa. C.S. § 8811(b), (c) (rules regarding

applicability of 2016 statute). Throughout this opinion, we shall cite to the 1994 Law without reference to its repeal.[4]

The 1994 Law was Pennsylvania's first statute to deal with limited liability companies, a form of business organization that gained popularity in the early 1990s.[5] Like other portions of Pennsylvania's Associations Code (Title 15 of Pennsylvania Consolidated Statutes), it was drafted largely by what is now known as the Business Associations Committee of the Section on Business Law of the Pennsylvania Bar Association (sometimes referred to as the "Title 15 Task Force"). As that Committee's history of the 1994 Law points out, the statute was derived in substantial part from a Prototype Limited Liability Company Act (the "Prototype Act") that had been proposed by a working group at the American Bar Association in 1992. **See** Comm. Cmt. – 1994 to 15 Pa. C.S. § 8901.[6]

---

[4] If this case had arisen under the 2016 statute, the questions presented might be more easily resolved. The 2016 Act provides that a member of a limited liability company is subject to a contractual duty of good faith and fair dealing when discharging duties and obligations or exercising rights under the Act or the company's operating agreement. 15 Pa. C.S. § 8849.1(d), (i). This provision is not made retroactive, however, and thus is inapplicable to this case. **Cf. Hanaway**, 168 A.3d at 157-58.

[5] The popularity of this business form may be explained by the fact that a limited liability company is "a conceptual hybrid, sharing some of the characteristics of partnerships and some of corporations. In particular, an LLC combines the two most critical features of all of the other business organizations in a single business organization — a corporate-styled liability shield and the pass-through tax benefits of a partnership." **In re Allentown Ambassadors, Inc.**, 361 B.R. 422, 442 (Bankr. E.D. Pa. 2007) (citations and internal quotation marks omitted); **see** Comm. Cmt. – 1994 to 15 Pa. C.S. § 8925.

[6] Section 1939 of the Statutory Construction Act provides:

*(Footnote Continued Next Page)*

- 15 -

The 1994 Law provides that where, as is the case for RDTA, a limited liability company's governing documents so provide, the company shall be managed by designated managers;  otherwise, the company shall be managed by its members.  15 Pa. C.S. § 8941.  The 1994 Law also provides that the company's Operating Agreement may set forth rules for the company's organization — including rules specifying requirements for voting by members on certain types of decisions — that vary from those in the Law, *see id.* § 8915, 8916(b), 8942; and, as noted, RDTA's Operating Agreement

*(Footnote Continued)* _____

> The comments or report of the commission, committee, association or other entity which drafted a statute may be consulted in the construction or application of the original provisions of the statute if such comments or report were published or otherwise generally available prior to the consideration of the statute by the General Assembly, but the text of the statute shall control in the event of conflict between its text and such comments or report.

1 Pa. C.S. § 1939.  The Business Associations Committee drafted comments to sections of the 1994 Law "to form part of the legislative history of [the Law] and to be citable as such" under Section 1939.  Comm. Cmt. – 1994 to 15 Pa. C.S. § 8901; *see generally* W.H. Clark, Jr., *Forward to Title 15*, 15 Pa. Cons. Stat. Ann. xxi, xxiv-xxv (2013).  The Committee's comments adopt portions of the commentary to the ABA's Prototype Act, but "are not intended to supersede the comments to the Prototype Limited Liability Company Act which contain detailed discussion of the laws of other states and the federal income tax aspects of organizing limited liability companies which have been omitted from the Pennsylvania comments."  Comm. Cmt. – 1994 to 15 Pa. C.S. § 8901.  In light of these authorities, we rely on some of this commentary later in our opinion.  The ABA's Prototype Act appears not to be available online, and we refer to the text of that draft legislation as it appears in Volume 3, Appendix C to the very helpful treatise by Robert R. Keatinge and Larry E. Ribstein, *Ribstein and Keatinge on Limited Liability Companies* (Thomson Reuters 2017).

thus contains special requirements for votes by RDTA's members on the company's dissolution and sale of assets.

The duties applicable to a limited liability company's members and managers are set forth in Section 8943, which provides:

**Duties of managers and members**

**(a) Companies without managers.**—If the certificate of organization does not provide that the limited liability company shall be managed by managers, every member must account to the company for any benefit and hold as trustee for it any profits derived by him without the consent of the other members from any transaction connected with the organization, conduct or winding up of the company or any use by him of its property. This subsection may not be varied by any provision of the certificate of organization or operating agreement.

**(b) Companies with managers.**—If the certificate of organization provides that the company shall be managed by one or more managers:

(1) Sections 1711 (relating to alternative provisions) through 1717 (relating to limitation on standing) shall be applicable to representatives of the company. A written provision of the operating agreement may increase, but not relax, the duties of representatives of the company to its members under those sections. For purposes of applying the provisions of those sections, references to the "articles of incorporation," "bylaws," "directors" and "shareholders" shall mean the certificate of organization, operating agreement, managers and members, respectively.

(2) **A member who is not a manager shall have no duties to the company or to the other members solely by reason of acting in his capacity as a member.**

15 Pa.C.S. § 8943 (emphasis added). The trial court relied on Section 8943(b)(2) in holding that the Mid Atlantic Physicians had no duties to the Retina Physicians and therefore could not be held liable to them. Trial Ct.

Op. at 6. Not surprisingly, the Mid Atlantic Physicians echo the trial court's reasoning, contending that Section 8943(b)(2) is clear and unambiguous in foreclosing any basis for actions against them as RDTA members for breach of any duties to other members. Appellees' Br. at 17-19.[7]

In response, the Retina Physicians rely on a Committee Comment to Section 8943(b)(2), which states:

> Subsection (b)(2) makes clear that members who do not act as managers, like corporate shareholders and limited partners, do not have the fiduciary duties of managers. Even if a member is not involved in management, however, the member has no right to appropriate for personal use property belonging to the company. It is intended that the courts will fashion rules in appropriate circumstances by analogy to principles of corporate or partnership law to deal with situations such as oppression of minority members, actions taken in bad faith, etc. **See** 15 Pa.C.S. § 110.

Comm. Cmt. – 2001 to 15 Pa.C.S. § 8943. Section 110 of the Associations Code, which is referenced in the comment, reads:

> Unless displaced by the particular provisions of this title, the principles of law and equity, including, but not limited to, the law

---

[7] The Mid Atlantic Physicians contend that this interpretation of the statute is bolstered by Section 8922(a) of the 1994 Law, entitled "Liability of members and managers," which provides that members "shall not be liable, solely by reason of being a member, under an order of a court or in any other manner for a debt, obligation or liability of the company of any kind or for the acts of any member, manager, agent or employee of the company." 15 Pa.C.S. § 8922. Section 8922 deals with members' liability to third parties, such as company creditors — not liability to other members. **See** Comm. Cmt. – 2001 to 15 Pa. C.S. § 8922 (subsection does "not deal with the internal affairs" of the company and may be varied only by "expand[ing members'] liability to third parties"). We therefore find the section inapposite. Similarly, other provisions of the 1994 Law discussing members' liability to the company itself (as in a derivative action) deal with duties distinct from those owed to other members and also are not instructive here.

> relating to principal and agent, estoppel, waiver, fraud, misrepresentation, duress, coercion, mistake, bankruptcy or other validating or invalidating cause, shall supplement its provisions.

15 Pa.C.S. § 110. The 1994 Law specifically provides that Section 110 may be used as a basis for determining the liability of a limited liability company's members. 15 Pa. C.S. § 8904(b).[8]

In light of the comment to Section 8943(b)(2), the Retina Physicians contend that the trial court misconstrued Section 8943(b)(2) as setting forth an absolute rule that no member of a manager-managed limited liability company ever owes a duty to another member, a result that the comment makes clear was unintended by the statute's drafters. *See* Retina's Brief at 20. They contend that, properly read, the provision gives courts the flexibility to analogize to corporate and partnership law to bar a member from engaging in the oppressive conduct that they allege occurred here.

In resolving this issue, our first task is to determine whether, as the Mid Atlantic Physicians suggest, the language of Section 8943(b)(2) is so plain and unambiguous as to foreclose any interpretation that would permit a recognition of duties owed by RDTA's members to other members of the company. The provision states that a member who is not a manager "shall have no duties . . . to the other members **solely by reason of acting in**

---

[8] Section 8904(b) states that the liability of members shall be determined "solely and exclusively" by the provisions of the 1994 Law "[e]xcept as otherwise provided in section 110 (relating to supplementary general principles of law applicable)."

**his capacity as a member**." 15 Pa. C.S. § 8943(b)(2) (emphasis added). The provision thus suggests that the mere fact that a member acts as a member of the company is not a sufficient basis upon which to make that member liable to other members. The word "solely" further suggests, however, that a member may have duties to other members if the member is held to account for reasons other than or in addition to his mere status as a member of the company. The provision does not explain what situations would give rise to such duties, leaving it to the courts to fill in this gap in the statute. For this reason, we hold that Section 8943(b)(2) "is not explicit or is ambiguous." **Taylor**, 164 A.3d at 1155; **see id.** at 1156 (provision is ambiguous if it does not "contain[] any explicit language addressing the issue raised"). Therefore, we may look to the comments to Section 8943 as well as its legislative history to discern the provision's meaning. 1 Pa. C.S. § 1921(c), 1939.

The Committee Comment to Section 8943 states that a member who appropriates company property for his personal use is not absolved of liability despite the language of Section 8943(b)(2). **See** Comm. Cmt. — 2001 to 15 Pa. C.S. § 8943. In providing that example of a case in which the "no duties" language of Section 8943(b)(2) is inapplicable, the Comment implies that a member who acts for selfish personal reasons is not acting "solely . . . in his capacity as a member" and may not claim protection under Section 8943(b)(2). This view of Section 8943(b)(2) is supported by comments to Section 402(C) of the Prototype Act, on which Section

8943(b)(2) is patterned.[9]  In language closely resembling that of Section 8943(b)(2), Section 402(C) states:

> One who is a member of a limited liability company in which management is vested in managers under § 401 and who is not a manager shall have no duties to the limited liability company or to the other members solely by reason of acting in the capacity of a member.

A comment to Section 402(C) explains:

> Subsection (C) makes clear that members who do not act as managers, like corporate shareholders and limited partners, do not have the fiduciary duties of managers described in this Act. However, they may have fiduciary duties if they engage in control transactions or act in some capacity other than merely as a member.  *See **Donahue v. Rodd Electrotype Company of New England, Inc.***, 328 N.E.2d 505 (Mass. 1975) (liability of controlling shareholder in close corporation).  Moreover, even if a member is not involved in management, the member has no right to appropriate for personal use property belonging to the LLC.  *See **Tri-Growth Centre City Ltd. v. Silldorf***, 265 Cal. Rptr. 330 (Cal. App. 1989).  In addition, members like other contracting parties, must exercise their powers in good faith. For example, it may be bad faith to expel a member solely or primarily in order to appropriate the value of the member's interest.  In general, while the Committee believes that some type of "partner-like" duties should be imposed upon non-managing members, it concluded that the exact nature of those duties and whether they should be applied to all members or only managing members is an area best left to the courts.

Prototype Act § 402(C), Cmt. The comment thus suggests that members acting to oppress other members for their own benefit do so "in some capacity other than merely as a member" and therefore, contrary to the Mid

---

[9] When enacting the 1994 Law, the Legislature appended to the statute a list of official Source Notes that identify the source from which each provision was drafted.  The legislation lists Section 402(C) of the Prototype Act as the source of Section 8943(b)(2).  *See* Act No. 1994-106, P.L. 703, 772 (Dec. 7, 1994) (calling section "402(c)").

Atlantic Physicians' interpretation of Section 8943(b)(2), they **do** have duties to the other members in those circumstances.

The Committee Comment to Section 8943 further states that we should look to corporate and partnership law to ascertain whether and what duties exist in "situations such as oppression of minority members," Comm. Cmt. to 15 Pa. C.S. § 8943, and Sections 110 and 8904(b) explicitly authorize us to apply "principles of law and equity, including, but not limited to, the law relating to principal and agent, estoppel, waiver, fraud, misrepresentation, duress, coercion, mistake, bankruptcy or other validating or invalidating cause" in connection with this task. 15 Pa. C.S. § 110.[10] Our review of the authorities reveals that courts in Pennsylvania and other jurisdictions routinely have provided remedies when a controlling faction of a corporation, partnership, or other business entity engages in conduct alleged to oppress a minority.

The issue arises most commonly within corporations,[11] when controlling shareholders seek to benefit themselves at the minority's expense. In **Donohue**, the Massachusetts decision cited in the comment to

---

[10] The 1994 Law does not make any explicit reference to oppression by a majority of the members, but the statute's provisions on dissolution appear to recognize that a segment of the company's members may act wrongfully in dissolving the company. **See** 15 Pa. C.S. § 8973(a)(1) (sometimes limiting those who may wind up the company's affairs to "the members who have not wrongfully dissolved the company").

[11] In **Missett v. Hub Int'l Pa., LLC**, 6 A.3d 530, 537 (Pa. Super. 2010), we observed that a "'membership interest' is an ownership interest in a limited liability company and is akin to an interest in stock of a corporation."

the Prototype Act, a closely-held corporation purchased some of its shares from the controlling shareholders at a favorable price that it then refused to offer to the minority. In recognizing a cause of action in favor of the minority shareholders, the Supreme Judicial Court analogized the closely held corporation to a partnership, in which "the relationship among the stockholders must be one of trust, confidence and absolute loyalty if the enterprise is to succeed." *Donahue*, 328 N.E.2d at 512. The court then continued:

> Although the corporate form provides . . . advantages for the stockholders (limited liability, perpetuity, and so forth), it also supplies an opportunity for the majority stockholders to oppress or disadvantage minority stockholders. The minority is vulnerable to a variety of oppressive devices, termed "freezeouts," which the majority may employ. An authoritative study of such "freeze-outs" enumerates some of the possibilities: "The squeezers (those who employ the freeze-out techniques) may refuse to declare dividends; they may drain off the corporation's earnings in the form of exorbitant salaries and bonuses to the majority shareholder-officers and perhaps to their relatives, or in the form of high rent by the corporation for property leased from majority shareholders . . . ; they may deprive minority shareholders of corporate offices and of employment by the company; they may cause the corporation to sell its assets at an inadequate price to the majority shareholders . . . ." In particular, the power of the board of directors, controlled by the majority, to declare or withhold dividends and to deny the minority employment is easily converted to a device to disadvantage minority stockholders.

*Id.* at 513 (citations omitted). The court explained that, unlike a shareholder in a large, publicly held corporation, the minority shareholder in a closely held corporation "cannot easily reclaim his capital" because there is no market for his shares. *Id.* at 514. In light of this "inherent danger to

minority interests," the court held that "stockholders in the close corporation owe one another substantially the same fiduciary duty in the operation of the enterprise that partners owe to one another" and "may not act out of avarice, expediency or self-interest in derogation of their duty of loyalty to the other stockholders and to the corporation." *Id.* at 514-15 (citations and footnotes omitted).

In Pennsylvania, as in Massachusetts, our courts have agreed that majority shareholders of a corporation owe a fiduciary duty to the minority. *See Ferber v. Am. Lamp Corp.*, 469 A.2d 1046, 1050 (Pa. 1983) ("majority stockholders occupy a quasi-fiduciary relation toward the minority which prevents them from using their power in such a way as to exclude the minority"); *In re Jones & Laughlin Steel Corp.*, 412 A.2d 1099, 1103 (Pa. 1980) ("Pennsylvania and other jurisdictions have held that 'a freezing out of minority holders with the purpose of continuing the business for the benefit of the majority holders' is a violation of the fiduciary duty owed to minority shareholders by the majority shareholders" (footnote and citation omitted)); *Weisbecker v. Hosiery Patents*, 51 A.2d 811, 811-812 (Pa. 1947) (minority shareholder who held 10 out of 30 shares raised claim for breach of fiduciary duty against the two majority shareholders holding 19 and 1 share, respectively); *Viener v. Jacobs*, 834 A.2d 546, 550-51 (Pa. Super. 2003) (addressing whether two shareholders, each holding 1/3 share of company, oppressed minority shareholder holding 1/3 share), *appeal denied*, 857 A.2d 680 (Pa. 2004), *cert. denied*, 543 U.S. 1146 (2005). We

also have recognized that, contingent on the terms of the partnership agreement, general partners in a general or a limited partnership owe a fiduciary duty to the other partners. *See Boland v. Daly*, 318 A.2d 329, 333 (Pa. 1974) (construing statutory predecessor 59 P.S. § 54);[12] *Jarl Investments, L.P. v. Fleck*, 937 A.2d 1113, 1123 (Pa. Super. 2007). We have held the same with respect to joint venturers. *See Clement v. Clement*, 260 A.2d 728, 729 (Pa. 1970). Several cases have rendered similar holdings in other jurisdictions. *See* 1 L.E. Ribstein & R.R. Keatinge, *Ribstein and Keatinge on Limited Liability Companies* § 9.6, at 590-91 n.7 (2d ed. 2017) (citing cases).

We therefore agree with the following summary of the duties of members of a manager-managed limited liability company provided by a leading treatise on the subject:

> The courts have generally held that if a member is acting solely as such, he or she generally does not have any of the fiduciary duties of managers described in this chapter. Thus, the duties above in this section do not apply to members who do no more than approve the actions of designated managers.
>
> Members acting solely as such may breach [a] general duty of good faith . . ., although the courts often characterize the conduct as a breach of fiduciary duty. For example, it may be a breach of duty for the members to squeeze out or expel a member or for controlling members to appropriate benefits from

---

[12] *See George v. Richards*, 64 A.2d 811, 813 n.1 (Pa. 1949) (quoting 59 P.S. § 54 as follows: "Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership, or from any use by him of its property").

minority members by exercising or selling control. . . .

Non-managing members may have other duties, which may or may not be considered aspects of the good faith duty. Whether or not a member is involved in management, the member has no right to appropriate property belonging to the LLC for personal use. Also, members may have a duty to disclose in transactions with each other, as on sale of an interest in the LLC. Although these theoretical distinctions are largely reflected in the holdings of cases, the language of the opinions does not always clearly distinguish between the duties of members as such and those of managing members. Thus, courts sometimes impose what are labeled as "fiduciary" duties on non-managing members.

1 Ribstein & Keatinge § 9.6, at 588-92 (footnotes omitted).

The Mid Atlantic Physicians take issue with this analysis on several grounds. The most significant is their contention that it is error to look for analogies in the law applicable to corporate shareholders or general partners because members of a manager-managed limited liability company are not comparable to such business participants. Rather, they point out, the 1994 Law says such members are comparable to limited partners, and, the Mid Atlantic Physicians insist, limited partners owe no fiduciary-like duties to the other partners in their partnerships.

The Mid Atlantic Physicians' argument is based on Section 8904 of the 1994 Law, which provides:

**Rules for cases not provided for in this chapter**

**(a) General rule.—**Unless otherwise provided in the certificate of organization, in any case not provided for in this chapter:

(1) If the certificate of organization does not contain a statement to the effect that the limited liability company shall be managed by managers, the provisions of Chapters 81 [the

Partnership Code, 15 Pa. C.S. §§ 8101-8105] and 83 [the Uniform Partnership Act, 15 Pa. C.S. §§ 8301-8365 (repealed 2016)] govern, and the members shall be deemed to be general partners for purposes of applying the provisions of those chapters.

(2) **If the certificate of organization provides that the company shall be managed by managers**, the provisions of Chapters 81 [the Partnership Code], 83 [the Uniform Partnership Act] and 85 [the Pennsylvania Revised Uniform Limited Partnership Act, 15 Pa. C.S. §§ 8501-8594 (repealed 2016)] govern, and:

(i) the managers shall have the authority of general partners prescribed in those chapters; and

(ii) **the members shall be deemed to be limited partners for purposes of applying the provisions of those chapters**.

**(b) Basis for determining liability of members, etc.—**Except as otherwise provided in section 110 (relating to supplementary general principles of law applicable), the liability of members, managers and employees of a company shall at all times be determined solely and exclusively by the provisions of this chapter [the 1994 Law].

15 Pa.C.S. § 8904 (emphasis in subsection (a)(2) added). Section 8904(a)(2)(ii) "deems" members of a manager-managed company to be limited partners for purposes of applying, among other things, the provisions of the Pennsylvania Revised Uniform Limited Partnership Act,[13] and we assume for present purposes that limited partners have no duties to other

_____

[13] The 2016 statute that repealed the 1994 Limited Liability Company Law and replaced it with a new statute also repealed the Uniform Partnership Act and the Pennsylvania Revised Uniform Limited Partnership Act and replaced those statutes with new legislation on the same subjects. Those statutory changes are not relevant to our analysis here.

partners under that statute. *See Hanaway*, 168 A.3d at 154-58.[14] But Section 8904(b) makes clear that Section 8904(a)(2)(ii)'s "deeming" of members to be limited partners has nothing to do with members' liability, which is determined not by applying the provisions of the Pennsylvania Revised Uniform Limited Partnership Act, but by "solely and exclusively" applying the provisions of the 1994 Limited Liability Company Law, as supplemented by Section 110. The Mid Atlantic Physicians' claim that Section 8904 requires that they be treated as analogous to limited partners in determining their duties and liabilities to other RDTA members therefore is incorrect.

More generally, although members of a manager-managed company may be analogous to limited partners in other circumstances, the analogy does not apply to these facts. Where members of a company managed by managers are not involved in operation of the company, it stands to reason that their duties may be limited, as may be the case with limited partners.

_____

[14] The Mid Atlantic Physicians based their argument that limited partners have no duties to other partners on Section 8523(a) of the Revised Uniform Limited Partnership Act, 15 Pa. C.S. § 8523(a), which states that limited partners are not liable to third-party creditors of the partnership. *See* Appellees' Br. at 19. Section 8523(a) does not discuss limited partners' duties to other partners, and we deem it inapposite here. The Supreme Court's decision in *Hanaway*, which was issued after the Mid Atlantic Physicians filed their brief, provides more persuasive support for the Mid Atlantic Physicians' argument regarding limited partners' lack of duties. Though not applicable here, we note that the Pennsylvania Uniform Limited Partnership Act of 2016 (the statute that replaced the Pennsylvania Revised Uniform Limited Partnership Act referenced in Section 8904(a)) provides that limited partners under the new statute have a duty of good faith and fair dealing in exercising rights under the partnership. 15 Pa. C.S. § 8635(a).

Here, however, Mid Atlantic Physicians are accused of breaching duties they owed to the Retina Physicians by signing the "Written Consent of the Members Holding a Majority of the Percentage Interests" that authorized the sale of RDTA's assets to Mid Atlantic and the dissolution of RDTA. They signed that resolution pursuant to Section 6.06 of RDTA's Operating Agreement, which placed the authority to sell the assets and dissolve the company in the hands of a majority of the members, rather than in the hands of RDTA's managers. Thus, with respect to these decisions, the majority members were not mere passive bystanders to allegedly wrongful conduct by RDTA's management; they were the persons engaging in the wrongful conduct. With respect to the challenged decisions, the members exercised powers in place of RDTA's managers, and it therefore is appropriate to assess their duties in light of that non-passive role. ***See*** Prototype Act § 402(C), Cmt. (stating members "may have fiduciary duties if they engage in control transactions").

The Mid Atlantic Physicians' other arguments challenge whether the amended complaint sufficiently alleges a type of majority misconduct that should be actionable by the Retina Physicians. They assert, for example, that "the individual [Mid Atlantic] Physician Defendants are all **minority** members" of RDTA (apparently because each member's interest in the company is 5.263%), Appellees' Br. at 22 (emphasis added), and repeatedly emphasize that they comprise a majority only "in the aggregate," ***see id.*** at 6, 8. They complain further that the sale of RDTA's assets to Mid Atlantic

should not be called "self-dealing" because the amended complaint alleges only that they are "members and/or employees of" Mid Atlantic — not Mid Atlantic's "owners or controllers." *Id.* at 23.

We believe these arguments go to factual issues in the case and do not render Appellants' allegations legally insufficient. Notably, the Mid Atlantic Physicians cite no case law supporting any argument that these purported pleading deficiencies entitle them to dismissal. The amended complaint alleges that the Mid Atlantic Physicians all are members of Mid Atlantic and that most of them voted together — "in the aggregate" — to transfer RDTA's assets to Mid Atlantic and thereby to freeze the Retina Physicians out of receiving the benefits of their RDTA membership. Through those aggregate votes, they "controlled the majority interest in RDTA," and were its "controlling majority members." Am. Compl. at ¶ 43-44. The pleading also says that by transferring RDTA's assets to Mid Atlantic, their own company, they acted to make a profit at Appellants' expense. *Id.* ¶ 46(b). Whether the evidence would support these allegations and whether the facts that develop will amount to the type of majority oppression that is actionable under the case law is a matter to be determined on a factual record, not on preliminary objections. Rather, at this stage, "all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom." *Khawaja*, 151 A.3d at 630.

The factual record also will inform a decision about just what types of duties apply to the Mid Atlantic Physicians as RDTA members. The trial court

dismissed Appellants' claims because it held that the Mid Atlantic Physicians owed the Retina Physicians **no** duties as members of RDTA, a holding that we have disapproved. But although we have determined that the allegations are sufficient to allow this case to go forward on the understanding that the Mid Atlantic Physicians may have breached some type of duty to RDTA's minority members, we have avoided a definitive characterization of the type of duty that is at issue.

Appellants pleaded their claim as one for "breach of fiduciary duty," Am. Compl. Count I, but their pleading variously alleges that the defendants breached "a fiduciary duty," "a quasi-fiduciary duty," or "a duty of utmost good faith and fair dealing." **See id.** ¶¶ 44-45, 47-48. Appellants' brief frames the questions presented in terms of whether a "fiduciary duty" was owed to RDTA's minority members, Appellants' Br. at 5, but later references a "fiduciary duty of good faith and fair dealing," an apparent hybrid, **see id.** at 18. These terms are not synonymous. A fiduciary duty "is the highest duty implied by law" and exists in legal relationships requiring trust and confidence, where it often is enforced by tort actions. **See Yenchi v. Ameriprise Fin., Inc.**, 161 A.3d 811, 819-20 (Pa. 2017). The duty of good faith and fair dealing is most commonly recognized as a contractual obligation. **See Herzog v. Herzog**, 887 A.2d 313, 317 (Pa. Super. 2005). There are times, however, when the concepts blend. **See, e.g.**, **Birth Ctr. v. St. Paul Cos.**, 787 A.2d 376 (Pa. 2001). Appellants' apparent confusion about the correct terminology applicable to obligations within limited liability

companies seems to mirror the state of the law in this area in other jurisdictions. ***See*** 1 Ribstein & Keatinge §§ 9.6, 9.7; ***see generally*** Comm. Cmt. – 2016 to 15 Pa. C.S. § 8849.1 (discussing duties applicable under 2016 Limited Liability Company Act).

None of the parties have addressed this confusion in their briefs to this Court and it is unnecessary for us to do so to resolve this appeal. Appellants' varying formulations have adequately pleaded a breach by the Mid Atlantic Physicians of a duty and standard of care owed to them. The precise nature of that duty may be determined as this case progresses on remand. For now, we hold only that, on the facts alleged, the trial court erred in holding that Appellants could not proceed with their claim in Count I of their amended complaint on the ground that the Mid Atlantic Physicians owed no duty to the Retina Physicians as members of RDTA. Further issues that stem from this holding will have to be resolved after the parties have developed a factual record.

### The Mid Atlantic Physicians' Duties as Managers of RDTA

In their Rule 1925(b) Statement, Appellants asserted that the trial court's no-duty holding was erroneous not only because the Mid Atlantic Physicians owed duties to them as members of RDTA, but also because they owed duties to them as managers. Appellees object to that contention because the amended complaint made no specific allegations regarding any breach of duties as managers.

Preliminarily, we are confounded by the fact that there is no clear indication in the record or the parties' briefs of the identities of the parties to which this argument pertains. Under RDTA's Operating Agreement, the company had up to six managers, but no one has told us who they were. Appellants imply that the managers may have included Drs. Brown, Fischer, and Sivalingam because they were the Director and Co-Directors of Wills Eye's Retina Service, Am. Compl. ¶¶ 14-15, but Appellants do not clearly say that and make no allegation regarding the manager status of anyone else. And although the Mid Atlantic Physicians argue that manager-related claims cannot now be asserted against those of them who were managers, they do not say on whose behalf they make that argument.

In arguing that this case does not present claims against managers, the Mid Atlantic Physicians point out that Pennsylvania is a fact-pleading state and that "[t]he material facts on which a cause of action or defense is based shall be stated in concise and summary form." Appellees' Br. at 14, *quoting* Pa.R.Civ.P. 1019(a). They continue:

> Nowhere in the Amended Complaint do [Appellants] state concisely or summarize the material facts to support a manager-managed fiduciary duty. The Amended Complaint fails to aver (1) that RDTA was a manager-managed LLC; (2) that any Physician Defendant was, or acted as, a manager of RDTA; or (3) that such Physician Defendant's actions as a manager breached a duty to Drs. Belmont and Kleiner.

*Id.* They allege that these deficiencies failed to "put them on notice of liability as managers." *Id.* Appellants respond that the copy of RDTA's Operating Agreement attached to the amended complaint made clear that

- 33 -

the company was run by managers selected from among its members, and that —

> While the Amended Complaint references Physician Defendants' fiduciary duties as majority members of RDTA, liability is not premised exclusively on Physician Defendants' status as majority members of RDTA. Rather, under the facts averred, Appellants have asserted claims for any breaches of fiduciary duty that can be maintained against Physician Defendants.

Appellants' Reply Brief at 4.

"It is not necessary that the plaintiff identify the specific legal theory underlying the complaint." *Krajsa v. Keypunch, Inc.*, 622 A.3d 355, 357 (Pa. Super. 1993). Here, the amended complaint clearly states that Appellants seek to hold the Mid Atlantic Physicians liable for breaching duties owed to the Retina Physicians by their actions in selling RDTA's assets to Mid Atlantic and then dissolving RDTA. Appellants were not required to plead the legal theory on which they contended that the Mid Atlantic Physicians had such duties. The question is whether there is some aspect of a claim based on some of the defendants' status as managers that required a more specific pleading than Appellants provided.

The Mid Atlantic Physicians say that two additional facts that were missing from the pleading were that RDTA was a manager-managed company and that one or more of them acted as managers. Appellees' Br. at 14. We disagree. Facts in documents appended to a pleading are to be considered in assessing the pleading's sufficiency. *Pleet v. Valley Greene Assocs.*, 538 A.2d 567, 569 (Pa. Super. 1988). Here, the Operating

Agreement made clear that RDTA is a manager-managed limited liability company whose managers are selected from among RDTA's members. As members of RDTA, the Mid Atlantic Physicians surely already knew that. And while we have been confounded by the failure of the parties to tell us which of them were managers to whom this issue applies, each of the Mid Atlantic Physicians who is a defendant in this action surely knows whether or not he was a manager of the company and whether this issue therefore applies to him; he also knows that he has been made a defendant in this case and that Appellants seek to hold him liable. We therefore do not believe that the amended complaint was legally deficient in failing to name which of the Mid Atlantic Physicians were managers; it named all of them, and the status of each was a fact that would be revealed through discovery or other proceedings as the case progressed. *See generally Georges Twp. v. Union Trust Co. of Uniontown*, 143 A. 10, 18 (Pa. 1928) ("As a general rule, a party will not be required to furnish information which is peculiarly within the knowledge of the party demanding the particulars").[15] Any of the Mid Atlantic Physicians who was not a manager cannot face

---

[15] The authors of Standard Pennsylvania Practice 2d state that a "court may link the overruling of a preliminary objection" on the basis of insufficiency specificity "with the express recognition that further specificity could be obtained through pretrial discovery, for example, where the parties are adequately identified, or where the defendant has as much knowledge of the facts as the plaintiff." 5 Standard Pa. Prac. 2d § 25.71 (2015) (footnotes containing citations omitted).

liability as a manager, and any manager who is not already a defendant cannot face liability either.

The third fact that the Mid Atlantic Physicians say is missing is "that such Physician Defendant's actions as a manager breached a duty to [the Retina Physicians]." Appellees' Br. at 14. On this issue, we agree that Appellants were required to plead the material facts on which they sought to hold liable those of the Mid Atlantic Physicians who served as managers. In this connection, we have explained that —

> Material facts are ultimate facts, *i.e.* those facts essential to support the claim. Evidence from which such facts may be inferred not only need not but should not be alleged. . . . Allegations will withstand challenge under Rule 1019(a) if (1) they contain averments of all of the facts the plaintiff will eventually have to prove in order to recover, and (2) they are sufficiently specific so as to enable defendant to prepare his defense.

*Lerner*, 954 A.2d at 1236 (citation and brackets omitted). Here, the material facts on which Appellants base their claims against the Mid Atlantic Physicians are the signing of the resolution authorizing the sale of RDTA's assets to Mid Atlantic and dissolution of the company. *See* Am. Compl. ¶¶ 27-52. Appellants make no contention that they seek to hold the Mid Atlantic Physicians liable (as members or otherwise) for any other misconduct, and if Appellants later seek to hold any of the Mid Atlantic Physicians liable for other actions not alleged in the amended complaint, they may not recover for those unpleaded other actions. But Appellants may recover for the misconduct they have pleaded.

Appellees' position is that because the amended complaint said that each defendant engaged in the misconduct as a member of RDTA, Appellants may not recover for the exact same conduct by the exact same defendant to the extent that the defendant also acted as a manager of RDTA. Appellees cite no authority supporting that contention. Under the Operating Agreement, any defendant who was a manager also was a member. Although manager status sometimes may have given a member greater authority to act, it is not clear that matters here. By signing the resolution that forms the basis for Appellants' claim, all of the signers acted as **members** because Section 6.06 of the Operating Agreement vested **members**, not managers, with the authority to dissolve the company and sell its assets.

In addition, the only duty Appellants allege to have been breached by the Mid Atlantic Physicians is the duty they owed to the Retina Physicians as minority members of RDTA. We have held that all of the Mid Atlantic Physicians were subject to that duty as members. Appellees do not argue that this duty does not also apply to managers. As we have explained, the precise nature of the duty — a duty of good faith and fair dealing, or a more demanding duty as a fiduciary — remains to be decided in the case, and it may be that those Mid Atlantic Physicians who were managers may be subject to a higher standard. But the amended complaint already avers that the defendants are liable under each of these standards, **see, e.g.**, Am. Compl. ¶¶ 44-48, so that application of any of the standards will not be

without notice. On these facts, we therefore conclude that Appellants were not required to plead manager status in order to recover. Rather, we agree with Appellants that they can recover "for any breaches of fiduciary duty that can be maintained against Physician Defendants," Appellants' Reply Brief at 4, regardless of the defendant's status as a member or manager, so long as the recovery is based only on the facts currently alleged in the amended complaint.

Because the trial court erred as a matter of law in sustaining Appellees' preliminary objections in the nature of a demurrer, we reverse the order below and remand for further proceedings.

Order reversed in part.[16] Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/7/2017

---

[16] We do not disturb any part of the trial court's order other than that dismissing the claims under Count I of the amended complaint.