J-A27041-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

TRANSPORT UNLIMITED INC.  :  IN THE SUPERIOR COURT OF
                          :       PENNSYLVANIA
                          :
        v.                :
                          :
                          :
ARDMORE POWER LOGISTICS, LLC,  :
                          :
        Appellant         :       No. 863 WDA 2017

Appeal from the Judgment May 25, 2017
in the Court of Common Pleas of Allegheny County
Civil Division at No(s):  G.D. 14-21670

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:               FILED FEBRUARY 26, 2018

Ardmore Power Logistics, LLC ("Ardmore"), appeals from the Judgment entered in favor of Transport Unlimited Inc. ("TUI").[1]  We affirm.

In 2014, Ardmore and TUI, both brokers of freight transportation companies, entered into a contract whereby TUI would broker the transport of twenty-eight loads of equipment belonging to DTE, a large Michigan power company, from Oklahoma to a site near Susquehanna, Pennsylvania. TUI's flat-rate fees for hauling the equipment were set forth in documents

_____

[1] Although Ardmore purports to appeal from the May 17, 2017 Order denying its Motion for Post-Trial Relief and granting the Post-Trial Motion to Mold the Verdict filed by TUI, an appeal properly lies from the entry of judgment.  See Johnston the Florist, Inc. v. TEDCO Constr. Corp., 657 A.2d 511, 514 (Pa. Super. 1995) (en banc).  Since the trial court's docket reveals that the Prothonotary entered Judgment on May 25, 2017, and Ardmore filed a timely Notice of Appeal, there is no jurisdictional impediment to our review.  We have corrected the caption accordingly.

titled "Load Tenders."  Ardmore issued a separate "Load Tender" for each of the 28 shipments, and TUI's vice president, Rick Solomon ("Solomon"), signed each "Load Tender."

TUI and Ardmore also verbally discussed charges related to detention time,[2] and subsequently in a series of emails.  Significantly, an email from Solomon to an Ardmore employee, Patrick Arella ("Arella"), stated the following:

> In addition[,] as discussed[,] the Demur[r]age[3] charges for delivery on the fall of [sic] loads are $850.00 per trailer per day billed from load date to delivery date.  The charges for the compressor skid is $3,500.00 per day and will be billed accordingly[.]  Please send us in writing that you agree to the charges so there are no problems when the final bills come in[.]

Solomon Email, 4/21/14 (some capitalization omitted, footnote added).

Arella responded as follows:

> Agreed.  I want to make sure we all have the same understanding regarding the delivery of this package, as we have all just participated in a recovery effort that was less than satisfactory and resulted in additional construction costs.
>
> There is a rate in place for delivery. I understand that there is planned detention involved with these move[s] and is applicable for every 24 hour period following loading until the time of departure, and every 24 hour period after the load arrives at or near its destination, as the loads may be directed to a temporary staging yard.

_____

[2] Detention time is compensation for delays incurred during the shipment of the goods, and the loading or unloading of the goods.

[3] Demurrage can be used interchangeably with detention.

Arella Email, 4/22/14.

TUI engaged various third-party trucking companies to haul the equipment. These trucking companies billed TUI for the services of their trucks and drivers, including, inter alia, fees for detention time. TUI sent invoices to Ardmore, which were based on the rate set forth under the Load Tenders, and the detention charges incurred by the third-party trucking companies. Ardmore paid all of the flat-rate charges as set forth in the Load Tenders, and paid a portion of the detention charges (approximately $73,000). However, Ardmore refused to pay the remainder of the detention charges.

Consequently, TUI filed a breach of contract action to recover $195,245, plus costs. Relevantly, in its Amended Complaint, TUI averred the following:

> 10. Prior to providing service to [Ardmore], [TUI] orally advised [Ardmore] of its rates and also orally advised [TUI] that it would be responsible for detention charges from the date a shipment was picked up until the date of delivery, with two days[*] free time for transportation, which [TUI] agreed to orally.

Amended Complaint, 2/19/15, at 3. Ardmore filed an Answer and New Matter, wherein it responded, in pertinent part, as follows:

> 10. Admitted in part, but otherwise denied. [TUI] may have verbally described its rates; however, the rates that were ultimately agreed upon by the parties were confirmed and memorialized in emails. [Ardmore] also denies the allegation that [TUI] orally advised [Ardmore] that [Ardmore] would be responsible for detention charges from the date a shipment was picked up until the date of delivery with two days free. No such verbal advice was ever given. The terms of the contract were

set forth in writing, in a series of emails between [TUI's] President, [] Solomon and Ardmore Logistics' Steve Crudder and [] Arella between April 17, 2014[,] and April 22, 2014, attached to [Ardmore]'s New Matter as Exhibit "A". The exchange of emails memorialize the following terms: Detention would be applicable for every twenty-four (24) hour period, following loading until the time of departure; and every twenty-four (24) hour period, at or near the destination, and any and all right to detention was contingent upon successful check call notification, as more precisely described in Exhibit "A" to [Ardmore]'s New Matter.

Answer and New Matter, 5/15/15, at 2-3.

The case proceeded to a jury trial. Prior to trial, Ardmore filed a Motion in Limine, seeking to exclude Solomon, TUI's sole witness, from testifying about the specific detention charges billed by the third-party trucking companies. The trial court granted this Motion. During trial, the parties entered into a Joint Stipulation, which stated the following:

1. It is agreed that the 28 loads of equipment transported by the trucking companies hired by [TUI] arrived at their destination complete and in good condition, and that [TUI] was invoiced by the trucking companies for each of the loads.

2. It is agreed that [TUI's] exhibits titled Rate Confirmation & Shipment Instructions ("Rate Confirmations") describe the payments that [TUI] made to the trucking companies that [TUI] hired to transport the 28 loads.

3. It is agreed that the "Total Carrier Pay" amount listed on each of [TUI's] Rate Confirmations describes the total amount that the trucking companies billed to [TUI] for each of the 28 loads; that [TUI] would testify that a portion of the "Total Carrier Pay" amount on each Rate Confirmation includes detention fees that the trucking companies charged to [TUI]; and that [TUI] paid the trucking companies in full for each of the 28 loads.

4. It is agreed that [TUI's] invoices to [Ardmore] ("Freight Bills") for each of the 28 loads describe the charges that [TUI] billed to [Ardmore] for each load, and that [Ardmore] received each Freight Bill.

5. It is agreed that the "Total Charges" listed on each Freight Bill describe the total amount that [TUI] billed to [Ardmore] for each load; that a portion of the "Total Charges" includes detention fees that [TUI] charged to [Ardmore]; that [Ardmore] has paid some of the detention fees charged on the Freight Bills; and that [Ardmore] has not paid any of the Freight Bills in full.

6. It is agreed that Exhibit A to this Stipulation describes the amount that [TUI] charged to [Ardmore] on each of [TUI's] 28 Freight Bills; the payments that [Ardmore] made towards each Freight Bill and the dates that such payments were made; and the amount of each of [TUI's] Freight Bills that remained unpaid after each payment by [Ardmore].

N.T., 2/2/17, at 489-91; see also Joint Stipulation, 2/3/17.

Following trial, the jury entered a verdict in favor of TUI in the amount of $97,022.50, half of their requested claim. Ardmore filed a Motion for Post-Trial Relief, requesting the entry of a judgment notwithstanding the verdict ("JNOV"). The trial court denied Ardmore's Motion. TUI filed a Post-Trial Motion to Mold the Verdict. The trial court granted the Motion and molded the verdict to $112,488.46. Judgment was subsequently entered in favor of TUI. Ardmore filed a timely Notice of Appeal.

On appeal, Ardmore raises the following questions for our review:

A. Was a nonsuit or [JNOV] mandated because the [TUI] failed as a matter of law to introduce competent evidence at trial to establish a legally enforceable contract with regard to detention charges, containing terms sufficiently definite and certain to support a cause of action for breach?

B. Assuming arguendo that the evidence was competent to demonstrate a legally enforceable contract with regard to detention charges, was a nonsuit or [JNOV] mandated because [TUI] failed as a matter of law to introduce adequate evidence at trial to establish that the circumstances under which additional payments were due and payable were met, and from which a jury could reasonably determine the amount of detention charges that were properly due and payable, but remained unpaid?

Brief for Appellant at 3-4.

Our standard of review of an order denying JNOV is as follows:

Appellate review of a denial of JNOV is quite narrow. We may reverse only in the event the trial court abused its discretion or committed an error of law that controlled the outcome of the case. Abuse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill will.

When reviewing an appeal from the denial of a request for JNOV, the appellate court must view the evidence in the light most favorable to the verdict-winner and give him or her the benefit of every reasonable inference arising therefrom[,] while rejecting all unfavorable testimony and inferences…. Thus, the grant of JNOV should only be entered in a clear case[,] and any doubts must be resolved in favor of the verdict-winner….

It is axiomatic that there are two bases upon which JNOV can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. To uphold JNOV on the first basis, we must review the record and conclude that[,] even with all the factual inferences decided adversely to the movant[,] the law nonetheless requires a verdict in his favor, whereas with the second[,] we review the evidentiary record[,] and conclude that the evidence was such that a verdict for the movant was beyond peradventure.

In connection with the latter, evidence-based grounds for JNOV, relief will only be granted when the jury's verdict is so contrary to the evidence as to shock one's sense of justice.

Sears, Roebuck & Co. v. 69th St. Retail Mall, L.P., 126 A.3d 959, 967 (Pa. Super. 2015) (citations, quotation marks, and brackets omitted).

We will address Ardmore's claims together. Ardmore contends that it is entitled to JNOV[4] due to TUI's failure to establish the legally enforceable terms of an agreement with regard to detention charges. Brief for Appellant at 23, 32, 43. Ardmore argues that the "limited communications between the parties on this subject were contradictory and incomplete with regard to the circumstances in which detention charges would accrue, which would constitute a necessary, essential term of any alleged agreement on the subject." Id. at 23. Ardmore claims that there was no meeting of the minds on the terms of the detention charges. Id. at 23, 27, 29, 31. Ardmore asserts that Solomon did not testify "regarding the particular circumstances under which detention charges would accrue, how it was calculated, and precisely what gave rise to it." Id. at 27. Ardmore argues that the only documentary evidence pertaining to detention charges was the exchange of emails in April 2014. Id. at 27-28. Ardmore claims that while the emails demonstrate a rate for detention charges, they "do not reflect

_____

[4] While Ardmore raises a nonsuit issue in its Statement of Questions, it fails to set forth any argument regarding a nonsuit in its Argument. See Pa.R.A.P. 2119(a). Thus, this claim is waived.

- 7 -

agreement on the circumstances that must occur for detention to accrue, and they clearly conflict on the manner in which detention is to be calculated." Id. at 28. Ardmore contends that because the emails set forth different terms, a contract cannot be found and enforced. Id. at 28-29, 31.

Ardmore also asserts that even assuming the existence of a contract was established, TUI failed to present any evidence that detention occurred or the manner by which to calculate the amount of detention charges. Id. at 32-33, 41. Ardmore argues that, given the fact Solomon was precluded from presenting hearsay testimony regarding the particular days that detention had occurred, and TUI's failure to call any witnesses from the various third-party trucking companies, TUI did not establish that detention occurred as to any load. Id. at 33-34, 35-36, 37-40, 42; see also id. at 35 (wherein Ardmore contends that even accepting the terms of Arella's email to Solomon with regard to detention charges, TUI did not present any evidence regarding the time each truck was loaded prior to departure, when the truck departed, the arrival time of the truck, or the contents of each load). Ardmore claims that while it paid TUI approximately $73,000 in detention charges, there was insufficient evidence to determine any additional detention charges. Id. at 36-37, 40. Ardmore further argues that the jury could not base an award of detention charges on the invoices sent by TUI because the invoices do not prove that detention had occurred. Id. at 40-41. Ardmore asserts that the jury's decision to award TUI half of its

requested relief reflects the jury's inability to ascertain whether detention had occurred, and in what amount, based upon the lack of evidence presented at trial. Id. at 42.

To prove a breach of contract, a plaintiff must prove that a contract existed, it was breached, and damages resulting from the breach. Liss & Marion, P.C. v. Recordex Acquisition Corp., 983 A.2d 652, 665 (Pa. 2009).

> In order for an enforceable agreement to exist, there must be a "meeting of the minds," whereby both parties mutually assent to the same thing, as evidenced by an offer and its acceptance. It is equally well established that an offer may be accepted by conduct and what the parties do pursuant to the offer is germane to show whether the offer is accepted.

Prieto Corp. v. Gambone Constr. Co., 100 A.3d 602, 609 (Pa. Super. 2014) (citation omitted).

Here, the trial court denied Ardmore's request for JNOV based upon Ardmore's admission in its Answer and the parties' Joint Stipulation. See Trial Court Opinion, 5/17/17, at 1-3. With regard to Ardmore's admission in the Answer, the trial court found that Ardmore expressly stated that the terms of the contract were set forth in the series of emails between Solomon and Arella. See id. at 1-2. Further, the trial court found that from the Joint Stipulation and evidence presented, "the jury could have circumstantially inferred that the truckers hired by [TUI] were, in fact, detained for every day for which they were paid by [TUI], simply because [Ardmore] paid [TUI] for a portion of the detention invoices [TUI] sent to [Ardmore], and [TUI] paid

truckers for all detention billed to [TUI]." Id. at 3. The trial court also noted that the jury's award of half of TUI's requested relief indicated the entry of a compromise verdict. Id. at 3 n.1.

Based upon our narrow standard of review and the direct and circumstantial evidence presented at trial, we are constrained to agree with the trial court's finding. In the instant case, Ardmore admitted that the terms of the detention charges were memorialized in the emails between Arella and Solomon. Answer and New Matter, 5/15/15, at 2-3; see also Arella Email, 4/22/14; Solomon Email, 4/21/14. David Cottenden, Ardmore's General Manager, confirmed the contents of the admission in the Answer, as well as the payment of detention fees pursuant to the terms of the contract. N.T., 2/1/17, at 433-42; see also N.T., 2/1/17, at 307-08 (wherein Solomon testified that Ardmore paid some of the detention charges at the rate quoted by TUI). Thus, based upon Ardmore's admission in its Answer, as well as Ardmore's payment of some of the detention charges, there was sufficient evidence to establish the existence of a contract. See Coleman v. Wyeth Pharm., Inc., 6 A.3d 502, 524 (Pa. Super. 2010) (stating that judicial admissions have the effect of withdrawing facts from issue without the need for further evidentiary proof, and are binding on the admitting party); see also Herzog v. Herzog, 887 A.2d 313, 316 (Pa. Super. 2005) (noting that in interpreting a contract, courts may look at the

conduct of the parties or course of performance evidence as long as the evidence demonstrates a common understanding of the agreement at issue).

Moreover, the jury could draw reasonable inferences from the evidence presented at trial and the Joint Stipulation that the third-party trucking companies experienced detention. In point of fact, Admore conceded that TUI paid detention fees as part of the transport of the equipment, and that Ardmore paid TUI for some of the detention charges. See N.T., 2/2/17, at 489-90 (stating that "[i]t is agreed that the 'Total Carrier Pay' … describes the total amount that the trucking companies billed to [TUI] for each of the 28 loads; that … a portion of the 'Total Carrier Pay' amount … includes detention fees that the trucking companies charged to [TUI]; and that [TUI] paid the trucking companies in full for each of the 28 loads."); id. at 490 (stating that "[Ardmore] has paid some of the detention fees charged on the Freight Bills[.]"); see also N.T., 1/31/17, at 261-64 (wherein Solomon testified regarding the bills provided to the third-party trucking companies and the fact that the total charges included detention fees). Thus, because detention fees were paid, the jury reasonably could infer that detention had occurred.

Finally, with regard to the detention charges owed to TUI, we note that "damages need not be proved with mathematical certainty, but only with reasonable certainty, and evidence of damages may consist of probabilities and inferences." J.W.S. Delavau, Inc. v. E. Am. Transp. &

Warehousing, Inc., 810 A.2d 672, 685 (Pa. Super. 2002) (citation omitted). Here, attached to the Joint Stipulation were various exhibits, including invoices detailing the total amount charged by the third-party trucking companies to TUI. As noted above, this amount included detention charges, which TUI paid the third-party trucking companies in full. While the invoices from the third-party trucking companies did not detail the detention charges,[5] the exhibits included the invoices from TUI to Ardmore setting forth the amount Ardmore owed to TUI, specifying the charges for transport of each load and detention charges. Thus, in determining the damages, the jury could look to evidence that TUI paid the detention charges to the third-party trucking companies; TUI itemized the detention charges in its invoices to Ardmore; and Ardmore paid approximately $73,000 to TUI for detention charges as detailed in the invoices. Contrary to Ardmore's claim that there was no evidence to support the damages award for detention charges above $73,000, the jury could infer that detention on the various loads had occurred and additional damages were due. See Morin v. Brassington, 871 A.2d 844, 853 (Pa. Super. 2005) (noting that the fact-finder "was able to ascertain the fact of damages from the evidence presented in this case but not the exact amount of damages."). Thus, we will not disturb the jury's award to TUI of half of its requested relief. See Ely v. Susquehanna

_____

[5] In fact, the detention charges were redacted so as to avoid the admission of any hearsay statements by the third-party trucking companies.

Aquacultures, Inc., 130 A.3d 6, 11 (Pa. Super. 2015) (noting that "this Court will not disturb a verdict unless the injustice of the verdict should stand forth like a beacon.") (citation and quotation marks omitted); see also Morin, 871 A.2d at 852-53 (stating that "[c]ompromise verdicts are verdicts where the fact-finder is in doubt as to the defendant's liability vis-à-vis the plaintiff's actions in a given suit but, nevertheless, returns a verdict for the plaintiff in a lesser amount than it would have if it was free from doubt.").

Accordingly, the evidence, viewed in a light most favorable to TUI, established the existence of an agreement between TUI and Ardmore, a breach of the agreement, and damages owed to TUI. We discern no abuse of discretion or error by the trial court by its denial of JNOV. Accordingly, we cannot grant Ardmore relief on its claims.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/26/2018

- 13 -